The State v. Lewis.

THE STATE v. LEWIS, *Appellant.*

1. **Criminal Law** : ALIBI. When, upon the trial of an indictment for murder, the prisoner has given evidence to prove an *alibi*, it is error for the court to refuse an instruction to the effect that the jury must acquit if they have a reasonable doubt as to his absence at the time of the homicide.

2. **Presence of the Prisoner.** The rule that the record must affirmatively show the presence of the prisoner during the progress of the trial and at the rendition of the verdict, is sufficiently complied with if it shows that he was present at the opening of court on the day when the verdict was rendered. His absence will not be presumed until adjournment.

3. **Practice, Criminal**: ALIBI: EVIDENCE IN REBUTTAL. When evidence has been given on behalf of the prisoner to prove an *alibi*, the prosecution is entitled to offer rebutting evidence to prove his presence.

*Appeal from St. Louis Court of Appeals.*

*Henry T. Kent, L. B. Valliant* and *P. N. Jones* for appellant.

*J. L. Smith,* Attorney-General, for the State.

NAPTON, J.—This was an indictment against defendant for the murder of his wife in the city of St. Louis. On the trial, there was evidence to show a willful, deliberate and premeditated killing, by cutting the woman's throat from ear to ear, on the 13th day of October, 1876. The only evidence on the part of defendant was that on that day and at the time of the homicide, he was at Washington, Franklin county. To establish this he introduced five witnesses. In rebuttal the State offered witnesses to show that he was in St. Louis on that day. On the trial the court gave instructions explanatory of the crime of murder in the first degree, to which no objections are made. The defendant asked only one instruction, which the court refused to give. That instruction was as follows : " The jury are instructed, if they have a reasonable doubt that the defendant committed the homicide alleged in the indict-

ment, or was absent at the time said homicide was alleged to have been committed, they will find a verdict of acquittal," &c.

The instructions given by the court were these : The defendant is charged with the crime of murder in the first degree, by having, on the 13th day of October, 1876, feloniously, willfully, deliberately, premeditatedly and with malice aforethought, struck, cut, stabbed and killed Mary Ann Lewis. Before the jury can find the defendant guilty of murder in the first degree, they must be satisfied, from the evidence, that the act of killing was felonious, willful, deliberate, premeditated and done in malice. Willful means intentional ; that is, not accidental. Deliberate means in a cool state of the blood ; that is, not in a state of mental excitement, caused by lawful provocation, such as a blow or other personal injury ; known in law as the heat of passion. Premeditated means thought of beforehand for any length of time, however short. Malice means the intentional doing of a wrong act without cause or excuse. It signifies a heart regardless of social obligations and fatally bent on mischief. Malice and heat of passion are inconsistent, and cannot both exist together. Where there is malice there can be no heat of passion; where there is heat of passion there can be no malice. The existence of these constituent elements of murder in the first degree may be proved by circumstantial evidence ; positive or direct testimony of their existence is not required; and the malice necessary to murder in the first degree may be found by the jury from proof of antecedent threats, acts of great cruelty towards the deceased, and from the use of a deadly weapon. In determining the existence or non-existence of these elements of murder in the first degree, the jury should carefully examine and weigh all the evidence touching the act of killing and the language and conduct of the defendant towards the deceased at and prior to the homicide.

The jury are the sole and exclusive judges of the truth-

fulness of all the testimony, and have the right to reject and disbelieve any evidence given in the case. In determining the credibility of the witnesses, the jury should consider their manner upon the witness-stand, their character, their opportunities for observation, their relation to the parties and their feelings and interests. Partial variances or discrepances in the testimony of different witnesses on minute collateral points, should not be deemed sufficient ground for disbelief as to the material points, unless they are of such prominent and striking nature as to preclude the idea of their being the result of mere inattention, defect of memory or inadvertence. "The usual character of human testimony is substantial truth under circumstantial variety." If the jury believe and find that any witness has willfully and corruptly sworn falsely to any material fact in the case, they are at liberty to reject and disbelieve the whole of the testimony of such witness.

If from the evidence the jury find that at St. Louis county, and at any time prior to the finding of this indictment, the defendant did feloniously, deliberately, premeditatedly and with malice aforethought, assault, cut, stab and kill Mary Ann Lewis with a knife, as charged in the indictment, they will find him guilty of murder in the first degree, and so say in their verdict. When, from all the evidence in the case, the jury are morally certain of the guilt of the defendant, they should convict; when, from all the evidence, they are morally certain of his innocence, they should acquit; and when the whole evidence in the case leaves the mind of the jury in such a condition that they are neither morally certain of his innocence, nor morally certain of his guilt, then a reasonable doubt of his guilt exists, and the jury should acquit.

The instruction asked by the defendant called the attention of the jury to the only defense offered, and as it 1. CRIMINAL LAW: was unquestionably the law, we are unable alibi. to conjecture why it was refused. It is said that the instructions given impliedly conceded this. Per-

haps they did, but no one can read these instructions and conjecture that there was any question in the case in relation to the identity of the man who committed the homicide with the defendant. For instance, the jury are told that " in determining the existence or non-existence of the elements of murder in the first degree, they should examine carefully and weigh all the evidence touching the act of killing, and the language and conduct of defendant towards the deceased at and prior to the homicide." What else could the jury infer from this than that defendant was the man who committed the homicide ? The instruction assumes this, and calls the attention of the jury to his language and conduct to enable them to determine whether the offense was murder in the first degree, or some other grade of homicide. It is impossible to place the refusal of the court to give the instruction asked by defendant upon the ground that there was no evidence given to support an *alibi*. For the only defense was an *alibi*, and the only witnesses offered by defendant were to establish this defense. It was not pretended that the homicide was anything else than a willful, deliberate and premeditated killing, and constituted murder in the first degree, but the defendant insisted that he was not the man that did it. Strange to say, the court gave elaborate instructions explanatory of murder in its degrees, but refused to notice the instruction asked on the only point upon which any defense was offered. Such instructions were calculated to mislead the jury from the issue—indeed, they assumed the defense as frivolous and unfounded. It may have been so, but that was a matter for the jury.

Several other points have been discussed in this case ; one is that the grand jury which presented the indictment was taken from the body of St. Louis county at the November term, 1876, of the criminal court of the city, and was tried at the July term, 1878, after the separation effected by the scheme and charter. Since we have concluded that the case must be reversed, it is not deemed im-

portant to decide this question, as it may be avoided by a new indictment by the grand jury of the city.

It is also alleged that the record does not show affirmatively, that the defendant was present when the verdict 2. PRESENCE OF was rendered. It does show that he was PRISONER. present at the opening of the court, on the day the verdict was rendered. It never was decided by this court that the record must affirmatively show that the defendant is present at every hour of the day, or at every step of the proceeding on that day. It is sufficient that he was present when the court met, and his absence will not be presumed until an adjournment.

Another point made is in regard to the evidence introduced by the State in rebuttal of that produced by the 3. PRACTICE, CRIM- defendant in support of his defense of an INAL: alibi: evidence in rebuttal *alibi.* This is not a question of discretion as to the order of evidence, but as the attorney for the State had no ground to anticipate the defense of an *alibi*, he had a right to introduce evidence in rebuttal.

In regard to the arrest of a witness for the defense by the order of the circuit attorney, on the ground of perjury, and his subsequent introduction, it is deemed unnecessary to express any opinion. The judgment is reversed and the case remanded. Judge NORTON dissents.

‹ REVERSED.