The State v. Hope.

| | |
|---|---|
| 100 | 347 |
| 104 | 631 |
| 100 | 347 |
| 48a | 309 |
| 100 | 347 |
| 109 | 624 |
| 111 | 56 |
| 100 | 347 |
| 117 | 401 |
| 100 | 347 |
| 119 | 431 |
| 119 | 474 |
| 100 | 347 |
| 123 | 173 |
| 123 | 187 |
| 124 | 648 |
| 100 | 347 |
| 132 | 287 |
| 100 | 347 |
| 140 | 669 |
| 140 | 679 |
| 100 | 347 |
| 144 | 618 |
| 100 | 347 |
| f156 | 507 |
| 100 | 347 |
| 86a | 624 |
| 100 | 347 |
| 162 | 226 |
| 100 | 347 |
| 175 | 6625 |

## THE STATE v. HOPE, Appellant.

1. **Practice, Criminal:** OBJECTIONS TO EVIDENCE. It is necessary in criminal as well as in civil causes for a party objecting to the admission of testimony to state opportunely the reasons for the objection in order to preserve the ruling for review should it be adverse.

2. ——: ——. If the ruling be favorable to the party objecting and the evidence be excluded, generality in the objection would afford no cause for reversing the ruling of the trial court, but it would be sustained if defensible upon any grounds.

3. ——: EXCEPTIONS TO EVIDENCE. Where no exceptions are saved to the action of the trial court in admitting or rejecting evidence, its rulings in that particular will not be reviewed in the appellate court.

4. ——: OBJECTIONS TO EVIDENCE. A party cannot, in general, demand the exclusion of evidence called out in fair response to questions asked without objection.

5. ——: ——. When the legal objection to testimony is not apparent from the question that educes it, but is developed later in any way, the omission to object at the time it is admitted is no waiver of the right to have it excluded.

6. ——: SWEARING OF WITNESS, WAIVER OF. Where a witness has been examined by one party and cross-examined by the other and thus treated by both parties as being fully qualified to testify, objection that he was not sworn comes too late in the motion for new trial and the requirement that he be sworn will be held to have been waived.

7. ——: PRESENCE OF DEFENDANT AT RENDITION OF VERDICT: STATUTE: CONSTITUTION. The statute (R. S. 1879, sec. 1891; R. S. 1889, sec. 4191) permitting the verdict of the jury in a criminal cause to be received by the court and entered upon the records in the absence of the defendant, where such absence is wilful and voluntary on his part, is not in conflict with the constitution.

8. **Statute:** CONSTRUCTION. The courts will not declare a statute unconstitutional, unless it is manifestly so, and all fair and reasonable doubts on that point will be resolved in favor of its constitutionality.

*Appeal from Scotland Circuit Court.*—HON. BEN. E. TURNER, Judge.

AFFIRMED.

THIS cause is here upon an indictment, in the usual form, charging defendant with an assault upon Walker Hale with intent to kill.    He was convicted of unlawfully assaulting, stabbing and wounding Hale and was sentenced in accordance with that verdict.    He then appealed to this court after the customary motions.

The evidence, on the part of the state, tended to prove that defendant and Hale had an altercation on the public road, during the course of which defendant inflicted certain wounds on Hale with a knife.    That there was abundant testimony to support the verdict is not denied.

The defendant relied upon self-defense and furthermore offered evidence of good general reputation as a peaceable and quiet boy as well as for veracity.    In this branch of the case, during the examination of a witness for defendant, the following questions on his behalf were asked and answers given:  B. Riley, sworn on the part of the defendant.

DIRECT EXAMINATION.

1.  "Do you live in the neighborhood of Mr. Hope?"    *A.*    "Yes, sir."

2.  "Are you a relation of his?"    *A.*    "No, sir."

3.  "How long have you lived there?"    *A.*    "I have lived there within a half of a mile for ten or twelve years."

4.  "Have you been acquainted with the family?" *A.*    "Yes, sir."

5.  "Are you acquainted with his reputation for truth and veracity in the neighborhood?"    *A.*    "Yes, sir."

6.  "Is it good or bad?"    *A.*    "I think it is good."

The State v. Hope.

7. "Are you acquainted with his reputation as being a quiet and peaceable boy?" *A.* "It is considered good."

In rebuttal the state offered some evidence regarding defendant's reputation, in the course of which the question (referred to in the opinion) arose on a motion to exclude a part of the testimony of witness Zugg. The passage from the record presenting this point is as follows:

Ernest Zugg, recalled on the part of the plaintiff:

1. "Are you acquainted in the neighborhood in which the defendant, Gustus P. Hope, resides?" *A.* " Yes, sir."

2. "Are you acquainted in the neighborhood in which he resides with his general reputation as to being a quiet, law abiding boy?" *A.* "Yes, I guess I am."

By the court: "Is his general reputation good or bad?" *A.* "I don't know what general reputation is. I don't know what you mean."

By the court: "It is the estimation in which he is held by the people generally—is that general reputation good or bad?" *A.* "I don't know what you call good or bad."

3. "What is the estimation of him?" *A.* "It is quarrelsome."

Objected to.

By the court: "That will not do."

By the court: "General reputation consists in the estimation in which a man is held by the people generally."

4. "They were relatives of Mr. Hale's?" *A.* "Not all of them wasn't."

5. "Wasn't it a fact that this talk was from the relatives of Mr. Hale?" *A.* "I don't know that it was, it wasn't all from them."

6. "Wasn't the principal talk that you heard from them?" *A.* I don't know but one family that were relatives."

Here Mr. Smoot (counsel for defendant) asks that the court exclude all this testimony from the jury as not being founded on any time with reference to this difficulty.

By the court: "Objection overruled."

To the said action of the court in not excluding the said testimony from the jury the defendant by his counsel did then and at the time except.

Another witness (Mr. Goslin) for the state was examined on the same subject and the following questions asked and answers made without any objection or exception:

5. "Are you acquainted with his general reputation for peace and quiet in the neighborhood in which he lives?" A. "Yes, sir, I am."

6. "Is it good or bad?" A. "It is bad."

The opinion states the other facts bearing upon the questions discussed in it.

*Smoot & Pettingill* and *R. F. Walker* for appellant.

In attempting to impeach the defendant's reputation Edward Zugg testified "it is quarrelsome," without confining such reputation to defendant's neighborhood and his testimony should have been excluded. B. Riley, introduced as a witness to prove good reputation of defendant in his neighborhood, was upon cross-examination by the prosecution, and over the objection of the defendant, asked questions as to whether defendant ever drew a knife on Jim Wade or on John Houchens. It was also proved by the prosecution that he was once "turned out of school," etc. These are such errors as will reverse the judgment. *State v. Beatty*, 25 Mo. App. 214. Specific acts should not be inquired into. *Seymour v. Farrel*, 51 Mo. 95; *State v. Grant*, 79 Mo. 113. The witness for the state, Bondurant, should have taken some oath or affirmation in some form, especially in a

criminal case, so as to bring himself within the provisions of section 3328, Revised Statutes, at least. It will be seen that Bondurant was one of the most important witnesses for the prosecution by reference to his testimony. The record should show the presence of the defendant each day of the trial (*State v. Dooly*, 64 Mo. 146, and cases there cited); and it seems that some investigation should be had under Revised Statutes 1891, to determine whether or not the defendant was wilfully or voluntarily absent at the time the verdict was received and recorded by the court. It appears that he was not present at the time the jury were sworn to try the cause.

*John M. Wood*, Attorney General, for the State.

As to the first point, it will be observed that the offense was committed May 4, 1887, and the trial took place in August of the same year. The witness Zugg testified that he was acquainted with the general reputation of the defendant in the neighborhood in which he resides. This fixes the time definitely enough for the purposes of the examination. This testimony was offered for the purpose of affecting the credibility of defendant's testimony, and was confined to that purpose by the instructions of the court. It was admissible in evidence for that purpose. *State v. Palmer*, 88 Mo. 568; *State v. Grant*, 79 Mo. 113. No reasons were assigned for objections to this testimony at the time, and it was not error for the court to refuse to exclude the testimony after it was all in. *State v. Johnson*, 76 Mo. 121. (2) As to the second point, it is permissible to cross-examine a witness who has testified to reputation, as to his means of knowledge, and grounds for his opinion, and he may be cross-examined upon particular instances which test the truth of his statements in the examination in chief. 1 Greenl. Ev., secs. 461, 445–450; *State v. Miller*, 71 Mo. 89; 3 Russ. on Crimes, 299. No

reasons were assigned for objections to this testimony at the time, and the action of the court in admitting the testimony is not reviewable. *State v. Johnson, supra.* (3) No objections were made to the testimony of the witness, Wm. Bondurant, at the time; and where the attention of the trial court is called to the matter for the first time in the motion for a new trial, the appellate court will not review the action of the trial court upon that question. *State v. Reed*, 89 Mo. 168; *State v. Burk*, 89 Mo. 635. (4) The record shows that defendant was present at the time the jury was sworn, and at the time the verdict was received the defendant "wilfully and voluntarily absented himself." No objections were made at the time to the verdict being received by the court, and no suggestions that the absence of the defendant was otherwise than wilful and voluntary, and the court did not err in receiving it. *State v. Smith*, 90 Mo. 37; R. S. 1889, sec. 4191.

BARCLAY, J.—I. The points made by defendant upon the rulings of the trial court on the evidence are not well taken. Most of these rulings were made over objections to testimony which assigned no ground or reason for excluding it.

Section 1907 of our statutes concerning criminal procedure (R. S. 1879) declares that: "The provisions of law in civil cases, relative to compelling the attendance and testimony of witnesses, their examination, the administration of oaths and affirmations, and proceedings as for contempt, to enforce the remedies and protect the rights of parties, shall extend to criminal cases, so far as they are in their nature applicable thereto, subject to the provisions contained in any statute."

This has been a part of the law of Missouri from a date as early, at least, as 1835. It has been re-enacted repeatedly in the various revisions of the statutes that have taken place since then. Its language to-day is

substantially, if not identically, the same that it has been for some fifty years. R. S. 1835 [3 Ed.] p. 490, sec. 15; R. S. 1845, p. 880, ch. 138, sec. 16; R. S. 1855, p. 1191, ch. 127, sec. 18; Gen. Stat. 1865, p. 850, ch. 213, sec. 17; R. S. 1879, sec. 1907; R. S. 1889, sec. 4207.

In civil cases it has been uniformly ruled by this court, from a very early period of its history, that it is not sufficient for the purposes of review to object generally to improper testimony when offered, but that the grounds must be stated to the court with the objection. *Fields v. Hunter* (1843), 8 Mo. 128; *Roussin v. Ins. Co.* (1851), 15 Mo. 244; *Clark v. Conway* (1856), 23 Mo. 438; *Weston & Plattsburg Railway Co. v. Cox* (1862), 32 Mo. 456; *Lohart v. Buchanan* (1872), 50 Mo. 201. That rule has thus become a fixed part of our jurisprudence governing the trial of civil causes, and must be regarded as having been in contemplation of the law makers when the revision of the statutes, alluded to, occurred.

Section 1907 (R. S. 1879) should, therefore, be considered as having been re-enacted from time to time with the then prevailing rule relative to the examination of witnesses in civil cases as part of it, in accordance with an established principle of interpretation of laws. *Sanders v. Anchor Line*, 97 Mo. 27.

We hence consider it necessary in criminal, as well as in civil, causes, for a party, objecting to the admission of testimony, to state opportunely the reasons for the objection in order to preserve the ruling for review should it be adverse to the objector. If the ruling be favorable to the latter, however, and thus the evidence be excluded, generality in the objection would furnish no cause for reversing the ruling of the trial court. It would be sustained, if defensible, on any grounds. In *State v. O'Connor*, 65 Mo. 374, views are expressed somewhat at variance with those above indicated. In so far as they conflict that decision should no longer be regarded as authoritative.

II.   Referring to the other rulings of the trial court
on the evidence, as to some, no exceptions were saved
which precludes reviewing them, as this court has often
held; and as to others the objections were interposed too
late, that is to say after the testimony had been admit-
ted, unchallenged, in response to pertinent questions.
A party cannot, in general, demand the exclusion of
evidence called out in fair response to questions asked
without objection.   Nothing exceptional is shown here
affecting the application of that rule.

When the legal objection to testimony is not appar-
ent from the question that educes it, but is developed
later in any way (for instance on cross-examination), the
omission to object, at the time it came in, is no waiver
of the right to have it excluded.   It is only when the
exceptionable nature of the testimony has become
apparent that the failure to object may constitute a
waiver of objection.   The reason of this rule is thus
stated in a recent case:   "To allow a party to permit,
without objection, the admission of evidence, and for
the first time make his objection in instructions would
be intolerable practice.   If he had an opportunity to
interpose an objection, he cannot take the chances that
the testimony will be favorable to him and when it turns
out otherwise raise his objection, but must be held to
have waived it."   *Maxwell v. Railroad* (1884), 85
Mo. 95.

The rule itself merely involves an application of the
principle frequently declared of late that, on appeal,
parties are bound by the theories of law they asserted
or acquiesced in at the trial.   Whether such theories
take the form of instructions asked (*M. Forster Co. v.
Guggemos*, 98 Mo. 391), or of instructions unexcepted to
(*State v. Griffin*, 98 Mo. 672), or of rulings on evidence,
the nature of which is clear at the time, we think the
principle equally applies.

In the case before us it appears that defendant's
objection to the testimony of witness Zugg in rebuttal

(to the effect that defendant was generally reputed to be quarrelsome) was .that the question eliciting it did not fix any time with reference to the difficulty. The objection itself was not valid. The question, by the use of the present tense, did fix the time as that of the trial; but construing it broadly as an objection to receiving the testimony because it did not fix the time at that of the difficulty, then it was too tardy for recognition under the rule we have discussed.

Moreover, defendant made the same inquiry, as that against which his objection under discussion was directed, during the examination of his witness, Mr. Riley, and interposed no objection to the same question when asked Mr. Goslin, a prior witness for the state. (The statement preceding this opinion presents the exact language used in each of these instances.) There is respectable authority for holding that either of these acts on defendant's part was a waiver of the objection in question. *Hinde's Lessee v. Longworth*, 11 Wheat. 206; *Haydon v. Palmer*, 2 Hill. 205; *Gale v. Shillock*, 29 N. W. Rep. 661; *McCormick v. Laughran*, 16 Neb. 87. But without expressly deciding that point we think the trial court committed no reversible error in the ruling, considered in all its bearings.

III. The next assigned error rests on the claim that a witness testified on behalf of the state at the trial without having first been sworn. No objection on this ground was made at the hearing. It appears for the first time in a motion for a new trial and nothing in the record shows when the fact was discovered by defendant or his counsel. Had the point been suggested when the witness began his statement or during his examination, the irregularity or oversight of permitting him to testify, unsworn (if it existed), could have been easily and promptly rectified. But it was not suggested. After the witness had been examined in chief, he was fully cross-examined on the part of defendant. Thus

was he treated by both parties as in all respects fully qualified to testify.

It has been held by other courts, as well as our own, that, where an oath is requisite to qualify a person as a trier of the facts or of law, it may be waived by the competent parties in interest, either expressly (*Howard v. Sexton* (1850), 4 N. Y. (Comst.) 157; *Tucker v. Allen* (1871), 47 Mo. 488; *Grant v. Holmes* (1881), 75 Mo. 109), or by going forward in the matter without inquiry or objection. *Arnold v. Arnold* (1866), 20 Iowa, 275; *Merrill v. St. Louis* (1884), 83 Mo. 244; *Cochran v. Bartle* (1887), 91 Mo. 636.

We think the principle, on which these rulings are based, is applicable also to the case of a witness in the circumstances here shown. *Lawrence v. Houghton* (1809), 5 Johns. 129. This assignment of error has been considered on the assumption that the facts alleged were as claimed by defendant, but it is not thereby conceded that an affidavit accompanying a motion for new trial, though uncontradicted, is necessarily to be accepted as establishing the facts it recites, where they are such as have occurred in the immediate presence of the court.

IV. The record shows that the defendant was "wilfully and voluntarily absent" when the verdict of the jury was returned in open court, though his counsel was present at the time and defendant had been personally in attendance, until then, during the entire trial. He was afterwards brought in and the sentence of the court was pronounced in his presence, after his motions for new trial and in arrest had been overruled.

By section 1891 (R. S. 1879), in force when the alleged offense was committed and when the trial of defendant occurred, it is provided as follows: "No person indicted for a felony can be tried unless he be personally present during the trial; nor can any person be tried or be allowed to enter a plea of guilty in any

other case unless he be personally present, or the court and prosecuting attorney shall consent to such trial or plea in the absence of the defendant; and every person shall be admitted to make any lawful proof by competent witnesses or other testimony in his defense; provided, that in all cases the verdict of the jury may be received by the court and entered upon the records thereof in the absence of the defendant, when such absence on his part is wilful or voluntary, and when so received and entered shall have the same force and effect as if received and entered in the presence of such defendant; and provided further, that, when the record in the appellate court shows that the defendant was present at the commencement or any other stage of the trial, it shall be presumed, in the absence of all evidence in the record to the contrary, that he was present during the whole trial."

The provisos in this section first became a part of our law at the revision of 1879. Prior to that time, and ever since 1835, the statute declared that "No person indicted for a felony can be tried unless he be personally present during the trial," etc., omitting any such qualifications of that rule as are contained in the provisos of the present law. R. S. 1835; Gen. Stat. 1865,' p. 850, sec. 15. While the statute was in that form prior to the revision of 1879, this court had held it error to receive a verdict in the absence of defendant even though he had escaped from custody after the cause had been submitted to the jury. *State v. Buckner* (1857), 25 Mo. 167; *State v. Braunschweig* (1865), 36 Mo. 397. It had further been held that the record must affirmatively show the presence of defendant at the rendition of the verdict (*State v. Cross* (1858), 27 Mo. 332; *State v. Dooley* (1876), 64 Mo. 146), though in some instances that fact had been taken as established by inferences from other entries in the record. *State v. Schoenwald* (1860), 31 Mo. 147; *State v. Lewis* (1878), 69

Mo. 92.    The important change made in the statute by
the revision of 1879 (sec. 1891) was probably induced
by a consideration of the decisions mentioned.    In view
of the history of the law on the subject, there can be
no doubt of the legislative purpose in the amend-
ment.    It was, among other things, to prevent a
defendant from securing a mistrial and continuance
by escaping if in custody or absconding if on bail,
after the cause had been submitted to the jury and
before verdict rendered.    Whether that purpose was
accomplished will appear presently.

    The language of the law so plainly sanctions the
reception of a verdict by the court in defendant's
absence, when wilful or voluntary, that no difference of
opinion is likely to arise as to its meaning.    The diffi-
culty, if any there be, appears upon the suggestion that
the enactment in question may be in conflict with the
organic law, particularly with that section of the Bill of
Rights which declares that "in criminal prosecutions
the accused shall have the right to appear and defend
in person and by counsel; to demand the nature and
cause of the accusation; to meet the witnesses against
him face to face," etc.    Const. 1875, art. 2, sec. 22.

    The statute, in permitting a verdict when defendant
is voluntarily or wilfully absent, evidently proceeds on
the assumption that by such wilful or voluntary absence
the defendant waives the right to be present, which,
otherwise, he might constitutionally insist on.    Is such
waiver valid?

    In considering this question, we start from the
postulate that the courts will not declare a statute
unconstitutional unless it is manifestly so, and that all
fair and reasonable doubts on that point will be resolved
in favor of its constitutionality.    The presumption is
that the legislature acted within the proper sphere of
its powers, and, until the contrary is clearly and satis-
factorily made to appear to the court, the law will be
upheld.

The State v. Hope.

That the accused may waive some rights secured by the constitution, is a proposition supported by the authority of so many adjudicated cases that a citation of them now seems unnecessary. But there is great diversity of opinion respecting the particular constitutional rights that may be waived. Numbers of cases hold that certain rights cannot be waived by the accused, for reasons of public policy. It would probably tend to confuse, rather than to elucidate, the present case to attempt any summary of the principles applicable to the waiver of constitutional rights generally. The issue actually before us requires only a decision upon the validity of a waiver, by defendant's own act, of his right to be personally present at the rendition of the verdict.

Defendant undoubtedly has a right to be heard, and, for that purpose, to be present when the verdict against him, on a charge of felony is given; but, if, being on bail, he sees fit to run away at that stage of the trial, on whom shall the consequences of such misconduct fall?

It is a "fundamental legal principle" of far-reaching scope in its practical application (*N. Y. Mut. Life Ins. Co. v. Armstrong*, 117 U. S. 591; *Reynolds v. United States*, 98 U. S. 161; *Riggs v. Palmer*, 115 N. Y. 506), that "no one should have an advantage from his own wrong." Co. Litt. 148*b*; Broom's Leg. Max. [8 Ed.]. Yet, to hold that, in such a state of facts as we have supposed, defendant, during his wilful absence, retains the right, while he endeavors to increase the impossibility, of his being heard in the cause, would seem to us a clear instance of giving him a great advantage from his own wrong. The maxim is founded on principles of common fairness and good faith, as is, also, the idea expressed in section 1,891, that defendant, by voluntarily withdrawing from the court when the verdict is rendered, should be held to relinquish the right to be

present and heard, which, but for his own wrongful act, he might freely enjoy. In such case, he is deprived of no right. He merely refuses to avail himself of one, just as he may, in various ways, waive his constitutional right to confront the witnesses against him, under repeated rulings of the court. *State v. Wagner* (1883), 78 Mo. 644; *Merrill v. St. Louis* (1884), 83 Mo. 252; *State v. Houser* (1858), 26 Mo. 431.

In *State v. Smith* (1886), 90 Mo. 37, the present statute was considered, and no intimation of its unconstitutionality was made. In other cases it has been further held, even under the old statute (Gen. Stat. 1865, p. 850, sec. 15), that defendant's absence at the trial during part of the argument of counsel to the jury was not a prejudicial error requiring a reversal. *State v. Bell*, 70 Mo. 633; *State v. Grate*, 68 Mo. 22.

In other states, without such a statute as our present one, and under constitutional provisions, in most instances substantially like those in force here, it has been repeatedly held that where defendant was absent by his own voluntary act (*e. g.* by escape or by absconding while on bail), at the rendition of verdict in cases other than capital, the court might properly receive it, notwithstanding his absence. *Sahlinger v. People*, 102 Ill. 241; *State v. Kelly* (1887), 97 N. C. 404; *Price v. State* (1858), 36 Miss. 531; *Gales v. State* (1886), 64 Miss. 105; *Barton v. State* (1881), 67 Ga. 653; *Hill v. State* (1864), 17 Wis. 675; *Fight v. State* (1835), 7 Ohio, (part 1) 181; *Jackson v. State* (1887), 49 N. J. L. 252; *State v. Peacock* (1887), 50 N. J. L. 34; *Lynch v. Com.* (1878), 88 Pa. St. 189.

The principle on which these decisions rest has been declared in others in its application to different phases of court proceedings in criminal cases. *People v. Bragle* (1882), 88 N. Y. 585, as explained in *People v. Lyon* (1885), 99 N. Y. 224; *United States v. Davis* (1869), 6 Blatchf. 464; *State v. Paylor* (1883), 89 N. C. 539.

We do not think the court loses jurisdiction of the cause by reason of defendant's getting beyond the confines of the court room when the verdict comes in. *State v. Kelly* (1887), 97 N. C. 404. If that were the effect of such action on his part, the court would not have power to enter an order for his arrest thereafter so long as he remained away. That result certainly could not have been intended by the constitutional provision in question as now worded.

In interpreting the fundamental law of the state, it is proper to consider the effect and consequences of any proposed construction of it in ascertaining what was probably the intention designed to be expressed by the instrument. Constitutions like other laws are governed by established rules of interpretation and among others by that just mentioned. To hold that the flight of defendant while on bail, just before verdict, must necessarily produce a continuance of the cause would make it possible for any one able to give bond, by repeating that performance at each successive trial, to finally defeat the ends of justice. Such conduct would not deprive defendant of his constitutional right to bail, or of his freedom of action during every recess of the court while the trial lasted; but (if now sanctioned here) it would introduce a new and novel mode for securing continuances, having some advantage over the ordinary methods heretofore in use. It would have at least the merit of simplicity.

But we do not think those who framed, or the people who adopted, the constitution contemplated such a construction of it in this regard as would make it ever possible for any defendant in a criminal case to avoid and escape altogether a verdict, otherwise just and correct, by any such acts of his own. We believe that no language used in that instrument will bear a construction which would make such results possible.

We are of opinion that section 4191, Revised Statutes 1889 (R. S. 1879, sec. 1891), in so far as it relates to the

subject under discussion, is entirely constitutional, and that the trial court committed no error in proceeding in accordance with its terms.

We find no error in any of the rulings of the court, to which exceptions were saved, in the giving or refusal of instructions, and after a careful examination of the record observe nothing calling for further remark.

The judgment is affirmed for the reasons stated, with the concurrence of all the members of the court, except SHERWOOD, J., who dissents.