THE STATE v. MOORE, *alias* HALL, *Appellant.*

Division Two, June 27, 1893.

| | |
|---|---|
| ·117 | 395 |
| ¦130 | 395 |
| 117 | 395 |
| 132 | 145 |
| 132 | 197 |
| 132 | 359 |
| 134 | 418 |
| 117 | 395 |
| 136 | 116 |
| 137 | 10 |
| 117 | 395 |
| 179 | ⁵285 |

1. **Criminal Practice**: EVIDENCE: RES GESTÆ. The prosecuting witness, on a trial for burglary, may state as part of the *res gestæ* that she gave the alarm and told the police officer the direction she thought the burglar had taken in leaving the house and also how the window of the latter, which she found unfastened immediately after the burglary, could have been opened from the outside.

2. ———: ———. Where no grounds are assigned for objections to evidence, they will be disregarded on appeal.

3. ———: ———: ATTEMPTS TO ESCAPE. The confession of a defendant charged with crime and the fact that he made a desperate effort to escape when apprehended are admissible in evidence against him.

4. ———: ———. It is not error for the court to orally exclude from the jury the consideration of an improper remark of the prosecuting attorney relating to a matter of evidence not testified to by any of the witnesses.

5. **Criminal Law**: BURGLARY: BREAKING. The lifting of a window clasp and thus effecting an opening into a dwelling house constitutes a breaking, within the meaning of the statute relating to burglary.

6. ———: ———: LARCENY. One who not only breaks into a house with the intent to steal, but does steal, may be convicted of larceny as well as burglary.

7. ———: LARCENY FROM DWELLING HOUSE: INSTRUCTIONS. An instruction on larceny from a dwelling house approved.

8. ———: RECENT POSSESSION OF STOLEN PROPERTY: EVIDENCE. Recent possession of stolen property is presumptive evidence of guilt, and this applies to burglary as well as to larceny.

9. ———: TIME AND PLACE OF OFFENSE: BURDEN OF PROOF. It devolves upon the state to show that the defendant was present at the time and place of the commission of the offense.

*Appeal from St. Louis Criminal Court.*—HON. J. C. NORMILE, Judge.

AFFIRMED.

*McDonald & Howe* for appellant.

(1) The testimony of the witness, Mrs. Harmon, as to her conversation with officer Williams, to the effect that her house had been broken into, and that she thought the man had gone down the back way, was clearly erroneously admitted, as well as her statement that the window could be opened by a stick or a knife, from the outside, as she had once opened it in that way, herself. *State v. Dusenberry*, 20 S. W. Rep. 465; Wharton's Criminal Evidence [8 Ed.], sec. 405. (2) The testimony of officer Williams, to the effect that he found a pawn ticket upon the accused when the latter was searched at the station, was inadmissible. *State v. Frederick*, 85 Mo. 145; *State v. Harper*, 71 Mo. 425. (3) The testimony of the officer concerning the alleged admissions or confessions of the accused was wrongfully admitted. No proper foundation was laid for such evidence. *State v. Rush*, 95 Mo. 202; *State v. Duncan*, 64 Mo. 262; *State v. Kinder*, 96 Mo. 548. (4) Instruction number 2 for the state is erroneous. By the instruction the jury are first to convict of burglary in the first degree, and then in addition they are to convict of burglary and larceny, which seems to have been considered by the trial court as a separate,

distinct and somewhat aggravated offense. *State v. Hutchinson*, 20 S. W. Rep. 35; *State v. Hecox*, 83 Mo. 537; *State v. Owens*, 79 Mo. 620; *State v. Kelso*, 76 Mo. 505. (5) Instructions 5 and 6 should not have been given; they are proper only where the accused fails to introduce proof of his good character or where his character is shown to be bad. *State v. Kelly*, 73 Mo. 608; *State v. Kennedy*, 88 Mo. 341; *State v. Shaeffer*, 59 Iowa, 290; *Talliferro v. Com.*, 77 Va. 411; *State v. Bruin*, 34 Mo. 540; *State v. Brown*, 75 Mo. 319; *State v. Warden*, 94 Mo. 651. (6) The court should have given an instruction founded upon the testimony and theory of the accused. *State v. Partlow*, 90 Mo. 608; *State v. Palmer*, 88 Mo. 572; *State v. O'Connor*, 105 Mo. 126. The verdict is insufficient to support a judgment. The larceny feature of the charge against the accused under the Revised Statutes is now a graded offense of different degrees, with different punishments attached. Revised Statutes, secs. 3526, 3527.

*R. F. Walker*, Attorney General, and *C. O. Bishop*, Assistant Circuit Attorney, for the state.

(1) The first instruction given by the court fairly submitted to the jury the question of burglary in the first degree. (2) There is no conflict between the second, third and fourth instructions; there are no degrees of larceny under the statute, but there are four kinds. (3) Instructions 5 and 6 correctly declare the law in regard to the possession of property recently stolen. (4) An examination of the record will show that in not a single instance was the ground of objection stated to the admission of the evidence complained of. *State v. Hope*, 100 Mo. 347. (5) The verdict was sufficient under the statute. Revised Statutes, 1889, sec. 3529.

GANTT, P. J.—The defendant was indicted at the July term, 1892, of the St. Louis criminal court, for burglary and larceny. He was duly arraigned and a plea of "not guilty" entered. The cause was continued at his instance to the October term, 1892, at which he was tried, and convicted of both burglary and larceny, and his punishment assessed at ten years for the burglary and five for the larceny.

The testimony offered by the state tended to show as follows: On the twentieth day of May, 1892, Mr. and Mrs. Oliver Harmon resided in the house No. 2108 Chestnut street, in the city of St. Louis; this house was at the time their dwelling house; Mr. Harmon was a traveling salesman and absent from home; Mrs. Harmon was alone in the house and was awakened from her sleep early on the morning of that day and saw a negro man in her bedroom, heard him fumbling about the wardrobe, and saw him leave the room; in a few moments after, she sprang to the front window of the room, which opened upon Chestnut street, and screamed; almost immediately Sergeant Williams, of the police force, appeared in front of the house; she told him there had been a man in the house, and she thought he had gone out the back way; Williams started at once down the street to the corner, which he turned, and ran down the cross street to the end of the block.

Mrs. Harmon then investigated, and discovered missing an overcoat, a suit of clothes and an umbrella of her husband's, which had been in the wardrobe. She also found the window of the dining-room open, which had been fastened the night before with a clasp over the lower sash. Outside, on the ground, were impressions of feet in the soft earth and a small piece of stick. The clasp could be pushed back from the outside with a knife blade or pointed stick. The window opened upon

a back yard, from which a gate led into an alley, and there was a vacant lot in the rear extending to Market street, the first street south of Chestnut.

Police Officer Murphy was standing on the corner of Twenty-first and Market streets, under an awning; it was raining and he had on his rubber overcoat; he heard a rap call from his sergeant (Williams), on Twenty-first street, between Chestnut and Market, and simultaneously saw defendant coming hurriedly down the north side of Market street. Defendant crossed Market street to the south side and threw something into a doorway. The officer ran to him and encountered him; he seized defendant, who had on an overcoat; defendant "wriggled" out of the overcoat and tried to get away, but was held by the officer; in the struggle both fell on the pavement, and just then Sergeant Williams came up; defendant was overpowered and taken into custody. The overcoat was shown to be Mr. Harmon's, and the thing thrown by defendant into the doorway was a suit of clothes of Mr. Harmon's, the same articles missed from the wardrobe above mentioned.

This was about three or half-past three o'clock in the morning. On the following morning in the "holdover" Sergeant Williams had a conversation with the prisoner, when the latter admitted having been in the house of Mr. Harmon; said he had been admitted by the house girl (whom he called "Pet"), and said he took the stuff because he "wanted to play the races." The overcoat was almost new, cost $65, and the suit of clothes had been worn and cost $40 or $50.

Defendant, testifying in his own behalf, stated that he had loaned his race course badge to the porter of a saloon on Twenty-first and Chestnut streets and he had gone there to get it; he left the saloon and walked south on Twenty-first street to Market to take a car

down town; on his way he heard the sergeant's rap; when he got to Market street he saw a bundle lying in the street; he picked it up, and just then an officer came up, to whom he handed the bundle; the officer then arrested him and the sergeant came up; there was no scuffle at all, and the officer who arrested him was not Murphy, but another, named Ahearn. He denied making the admissions testified to by Sergeant Williams; said he did not burglarize the place, and knew absolutely nothing about it.

Two witnesses (one of them a cab driver) testified that they had known defendant for some time; that his reputation was good; that is, they had never heard of his being in trouble before. The cab driver said he had met defendant at Twenty-first and Chestnut streets on the morning of the twentieth of May and paid him a dollar he owed him.

The court instructed as to burglary in the first degree, as to larceny in connection with a burglary, as to grand larceny in a dwelling house, as to petit larceny in a dwelling house, as to recent possession in burglary, and also in larceny, as to circumstantial evidence, credibility of witnesses, good character of defendant, *alibi*, and reasonable doubt. No instructions were asked by defendant and none refused.

The following statement appears in the bill of exceptions at the close of the state's case:

"Thereupon the defendant's counsel *ore tenus* requested the court to instruct the jury that they must not consider that portion of the prosecution's opening statement, which was to the effect as follows: 'At the time defendant was arrested on this charge, and searched at the station, there was found on him a pawn ticket which represented other stolen property;' *which the court thereupon did* orally, saying, 'the jury will not consider anything in the case which has not

been testified to by some witness.' The prosecuting attorney also said: 'I have offered no evidence to sustain that statement, and to that extent my opening statement was untrue.'"

No exception was saved to the action of the court or of the prosecuting attorney.

Various assignments of error are made in this court, and they will be considered in the order of defendant's brief.

I. No error was committed in permitting Mrs. Harmon to state that she gave the alarm, and told the officer, Williams, the direction she thought the burglar had taken when he left her house. What she said in connection with the alarm she was giving was most clearly a part of the *res gestæ.* Moreover, no ground was given for the exclusion of this testimony. A mere general objection to evidence is not sufficient. *State v. Hope,* 100 Mo. 347.

Her explanation as to how the window could be opened from the outside was most clearly competent. The jury were justly entitled to know and be placed in possession of every fact in regard to the building that was broken, in order to determine the grade of the offense, if any, that was committed in entering it.

II. There was no ground stated for the objection to officer Murphy's evidence as to Mrs. Harmon's identification of the clothing found in defendant's possession, and it cannot be reviewed here; but it could not have possibly worked any detriment to defendant, for Mrs. Harmon identified the clothing on the witness stand, and it was practically a conceded fact that they were her husband's wearing apparel, and had his initials on them.

III. No specific objections were stated in the trial court to the testimony of officer Williams and, for

reasons already stated, it is not for review here. *State v. Hope, supra.* There could, however, have been no valid objection to the confessions of the prisoner to Williams and Murphy, nor to their evidence of his desperate effort to escape when found with the clothing. This evidence was competent, material and convincing in its character.

IV. It is next said that the court erred in permitting the prosecuting attorney in his opening statement to tell the jury that, "When the defendant was searched there was found on his person a pawn ticket representing other stolen property." It is not claimed that any objection was made to the statement at the time it was made, or that the court was called upon to pass upon the propriety of such conduct. It was permitted to go until the state closed, and then counsel for defendant *orally* requested the court to instruct the jury not to consider that portion of the prosecuting attorney's remarks, and the record recites the court did so, also *orally*, and told the jury they would not consider anything in the case which had not been testified to by some witness, and thereupon the prosecution stated that he had offered no evidence to sustain that part of his opening statement, and to that extent it was untrue.

The defendant again took no exception whatever to the action of the court *in orally complying at once with his request*. So that there is again nothing here for review. But we do not see anything improper in the action of the court. This was not a question of law arising upon the evidence in the case which required a written instruction. It was nothing more than an ordinary ruling on evidence which the court admits or excludes by his oral declarations. This assignment is devoid of any merit. That counsel

should attempt to construe any action so fair and free of all prejudice to his client into an error, is beyond our comprehension.  We have no sort of doubt from the record, that counsel desired the oral instruction at the time, and we are equally well satisfied that no injury or harm resulted to defendant by the action of the court.

V. The objection to the first instruction of the court is that the proof was not sufficient to sustain "a forcible bursting and breaking of the outer window." The indictment fully met the requirement of the statute, in that it specified not only the breaking, but the manner of breaking, to-wit, "the outer window."

"Breaking and entering" to constitute burglary, were well understood at common law.  "The mere lifting of a latch and so opening a door not otherwise fastened, or pushing upward, or lowering a window sash, which is held only by a wedge or pulley weight, or raising a trap door meant to be kept down merely by its own gravitation, or procuring by craft or by threats and intimidation a person within the house to open the door, is in legal contemplation, a breaking." 1 Bishop on Criminal Law [3 Ed.], 327; *Ibid.* [8 Ed.], sec. 91; *State v. Tutt*, 63 Mo. 595.  Here the evidence showed that the house was closed and it was entered by a window that was fastened with a clasp over the lower sash.  To get into the window this clasp must be removed from over this sash.  It could be done with a knife or sharp stick.  There is no sort of doubt that the thief both entered and fled through this window, nor that it was fastened.  The lifting of the window clasp, and thus effecting an opening, was a breaking, within the meaning of our statute.  The owner had adopted this mode of securing his home, and the law cannot institute an inquiry into the sufficiency of the various fastenings employed.  *Carter v. State*, 68 Ala.

96; 2 American & English Encyclopedia of Law, 659, 661; *State v. Hecox*, 83 Mo. *loc. cit.* 538.

The second instruction merely authorized the jury, if they found that the defendant not only broke into the house with the intent to steal, take and carry away the goods and personal property therein stored, but did take, steal, and carry away the said personal property of said Harmon, they would also convict him of larceny. This is the well-settled law of this state. *State v. Owens*, 79 Mo. 619, and cases there cited.

By the third instruction the jury were advised that if they found defendant not guilty of the burglary, but found that he took, stole and carried away goods and wares from said dwelling house of the value of $30 or more, they would find him guilty of larceny from a dwelling house, and assess his punishment at not exceeding seven years, and in the fourth instruction they were instructed that, if they convicted him of larceny in a dwelling house and the value of the goods was less than $30, they would assess his punishment either at a term of imprisonment in the penitentiary not exceeding seven years, or by imprisonment in the county jail not exceeding three months. These instructions were unquestionably the law.

The fifth instruction simply announced the rule, long ago adopted in this state, that recent possession of stolen property is presumptive evidence of guilt, and that it applies as well in burglary as in larceny; and in the tenth instruction the court instructed the jury that, if the jury had a reasonable doubt as to whether defendant was present at the place where, and at the time when, the burglary was committed, they must acquit him, and the defendant was likewise given the full benefit of the evidence as to his good character. As to this, two witnesses testified, neither of them qualified as to a knowledge of his character *in the*

*neighborhood in which he resided, nor what his reputation for honesty was.* The defendant complains of the instruction as to an *alibi.* His position is very peculiar as to this.

The instruction given in this case would be proper in any case, in which the state sought a conviction on circumstantial evidence. It devolves upon the state to show defendant was at the place where, and at the time when, the offense was committed.

The verdict was responsive to the issues, and is sufficient in every respect. There is no substantial error in this record, and the judgment is affirmed. BURGESS and SHERWOOD, JJ., concur.