THE STATE v. BREWER. *Appellant.*

DIVISION TWO.

1. Criminal Practice: IMPANELING JURY. Misconduct of the court in the impaneling of the jury is a matter of exception, and unless such exception is saved the error will not·be considered on appeal.

2. ———: INSTRUCTIONS: WAIVER OF ERROR. The failure to give, on a murder trial, an instruction as to manslaughter is not assignable as error, unless the omission is called to the attention of the court in the motion for a new trial.

3. ———: CONSPIRACY: EVIDENCE. The evidence in this case of a criminal conspiracy between the defendant and his father to murder the deceased *held* sufficient to go to the jury.

*Appeal from Oregon Circuit Court.*—HON. JOSEPH
CRAVENS, Judge.

AFFIRMED.

*Livingston & Green* for appellant.

(1) The court should have instructed on man-
slaughter. *State v. Branstetter*, 65 Mo. 149; *State v.
Johnson*, 76 Mo. 127; *State v. Dunn*, 80 Mo. 689; *State
v. Wilson*, 98 Mo. 440. · (2) The court erred in all the
instructions given in the cause. All the instructions
asked by defendant should have been given. (3) The
qualification of one of the jurors in the absence of the
defendant was error, and the motion for new trial
should have been sustained on this ground if no other.
*State v. Smith*, 90 Mo. 37.

*John M. Wood*, Attorney General, and *T. J.
Braswell*, Prosecuting Attorney, for the State.

(1) The court committed no error in the matter
of the qualification of the juror Flannery. (2) The
court committed no error in allowing witness, John
McCammon, to state what was said in Clark's store a
short time previous to the killing: What the defend-
ant said there, and the threats he made were competent
as tending to show to the jury a conspiracy and the
intent and purpose of the defendant. It was a circum-
stance to be considered by the jury as any other fact
in the case. *State v. Glahn*, 97 Mo. 679; *Carver v.
Husky*, 79 Mo. 509; *State v. Grant*, 79 Mo. 113; *State
v. Dickson*, 79 Mo. 438; *State v. Guy*, 69 Mo. 430;
*State v. McNally*, 87 Mo. 644. (3) There is nothing
to show that the court permitted the official steno-
grapher to read the testimony of the witnesses to the

jury. The motion does not prove itself. *State v. McDaniel*, 94 Mo. 301.

GANTT, P. J.—Defendant was jointly indicted with J. C. M. Brewer in the circuit court of Oregon county at its February term, 1891, for murder in the first degree, in the killing of Benjamin McCammon, in said county on the twenty-fifth day of December, 1890.

Judge CRAVENS of the thirtieth judicial circuit was called in to try the cause, the regular judge of the circuit having been disqualified, and at the adjourned February term, 1891, held in June, said cause was tried, and defendant convicted of murder in the second degree. His motion for a new trial and in arrest being overruled, he appealed to this court.

The testimony shows that on the twenty-fifth day of December, 1890, defendant and his father, deceased, and their relatives, with others, met at Myrtle, Oregon county, Missouri. The deceased was the father-in-law of the defendant. About noon, John McCammon, a a son of deceased, asked defendant and his father (J. C. M. Brewer) to go to dinner with him. Defendant declined the invitation, saying that he did not want any dinner, and exhibited a revolver and said: "By God, some one will get the contents of that before night." The other parties went to dinner; when they returned after dinner, defendant was intoxicated and quarrelsome, and continued to make threats; J. C. M. Brewer (defendant's father) got the pistol away from him, and told deceased and his son John that there would be no trouble; the defendant, however, continued to threaten and abuse the McCammons, particularly the deceased, and during the afternoon had several altercations with him; he went to the house of John McCammon where his (defendant's) wife was,

and said to her, "Get ready and do it damn quick. There is *going to be hell raised here directly.*"

Deceased was constable of the township at the time, and was trying to quiet defendant down and to persuade him to go home; *defendant's father followed them around wherever they went; a few minutes before the fatal difficulty he and defendant were seen in close conversation about something.* Shortly after. this, defendant commenced again in a very angry and abusive manner, cursing the deceased, and saying if he had a knife he would cut his throat, and threatening to kill him. Deceased was standing in the street in the village talking to his daughter, the wife of defendant, when defendant came up and spoke to his wife about going home, whereupon deceased invited them to go home with him; this, defendant declined. He testifies, he said: "'I am not going home with you. She may.' And he said she was going, and I told him she could go at her pleasure. I told him, 'The way John has been going on with me to-day, Flora will have to stop with the McCammons or me, one. If she goes with me, I will treat her like a lady. *If she goes with you, she can stay.*' The old man said he would take care of the child. I said, 'G–d damn it, he could not do it.' He said, 'G—d damn me, he would do it.'"'

The other witnesses say that thereupon the defendant, Doc. Brewer, jumped at the deceased, and he pushed him back, and defendant jumped at him a second time, and then deceased took him by the arms and tripped him, and was stooping over him holding him by the arms, the defendant endeavoring all the time to fight, and while in this posture defendant's father, "J. C. M." or "Sefe" Brewer, shot the deceased through the heart, and he expired within a· minute. The defendant and his father then mounted one mule and rode away.

The court instructed on murder in the first and second degrees and self-defense.

I. The first error assigned is in impaneling the jury. After the panel of forty jurors had been obtained, A. O. Nelson, one of the panel, was for good cause excused by the court. Thereupon William Flannery was summoned, examined and accepted. No objection was made at the time by defendant's counsel who was present. No suggestion was made that defendant was not present. *He was on bail and had been present during all the other proceedings.* He was furnished with a list containing this juror's name. He made no objection or challenge to the juror, and finally left him as one of the panel of twelve to try the case. He now says he was absent when this juror was qualified. It further appears, that his temporary absence from the court room was known to A. P. Couch, one of defendant's attorneys. Indeed, it is by his affidavit we learn that his client was not present, though his counsel was. No exception was taken until the motion for new trial was filed and then only by affidavit.

This practice cannot be tolerated. The improper impaneling of the jury was a matter of exception. As none was taken, it cannot be noticed here. *State v. Hayes*, 81 Mo. 574. We are cited to *State v. Smith*, 90 Mo. 37. In that case the defendant brought the matter to the attention of the court and demanded the right to examine the jurors on *voir dire*. This being refused, he duly saved his exceptions. That case went to the extreme. We are not disposed to extend it. When a defendant is on bail, it is his duty to be in attendance upon the court. The judge has other duties to perform besides watching the personal movements of the defendant. No possible prejudice is suggested here as resulting from this temporary absence, and it is no ground for reversal. *State v. Grate*, 68 Mo. 22.

II. Defendant also complains because the trial court gave no instruction for manslaughter. If he desired us to pass upon that question, he should have called the attention of the circuit court to the omission in his motion for new trial. Not having done so, it is not assignable as error here. *State v. Reed*, 89 Mo. 168; *State v. Mitchell*, 98 Mo. 657; *State v. Harvey*, 105 Mo. 316.

III. Defendant's counsel in their motion for new trial assign as error the giving of instructions, numbered ——, for the state, and the refusal of instructions, numbered ——, asked by defendant. As the offense is very grave, we have construed this objection as covering all the instructions given and refused.

If there is sufficient evidence in the record, justifying the court in submitting the matter of a criminal conspiracy between defendant and his father to kill Benjamin McCammon, then the instructions properly declared the law.

We think the conduct of the two, their frequent conferences prior to the killing, the threats of the defendant on one hand, against the deceased, the hovering of the two upon his movements, and the killing of deceased by the father when he must have known that his son had been and was provoking the difficulty, and the deceased, both as an officer of the law and a relative, was simply endeavoring to quiet the defendant and was holding him, only to prevent injury to himself, furnish sufficient evidence to the jury to find that the defendant was acting in concert with J. C. M. Brewer for the purpose, and with the intent to kill the deceased, or have him killed by his said codefendant. His own words indicate a knowledge of the intention of his father to kill deceased.

Learned counsel contend that there must have been deliberation if they had this prior understanding.

We think the evidence warranted the jury in saying there was deliberation, and if they had found the higher degree, the verdict would not be disturbed;. but we cannot see how defendant was prejudiced.'

It does not lie in his mouth to complain that the jury gave him a lighter punishment than the facts justified. The error, if any, was in his favor. *State v. Stephens*, 96 Mo. 638; *State v. Wagner*, 78 Mo. 644; R. S. 1889, sec. 3949.

The judgment is affirmed. All concur.