THE STATE OF KANSAS v. GRANT WAY.

No. 15,441. (93 Pac. 159.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Information—Conviction of Inferior Offense.* A conviction for an offense less than that defined in the statute upon which a prosecution is primarily based may be sustained if the information alleges the existence of all the essential facts constituting such less offense; and under such circumstances a more liberal construction is allowed than is ordinarily applied to criminal pleadings.

2. ——— *Return of Verdict—Absence of Defendant.* The right of the defendant to be present when a verdict is returned, secured to him by the statutory provision that "no person indicted or informed against for a felony can be tried unless he be personally present during the trial" (Gen. Stat. 1901, § 5649), is one that may be waived, and if while at liberty on bond he is voluntarily absent, without having been excused by the court, when the jury reach an agreement a verdict against him may lawfully be received in his absence.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed December 7, 1907. Affirmed.

*Fred S. Jackson,* attorney-general, and *John S. Dawson,* assistant attorney-general, for The State.

*Howard A. Scott,* and *J. B. Tomlinson,* for appellant.

The opinion of the court was delivered by

MASON, J.: Grant Way was prosecuted upon a charge of setting up and keeping a gambling device and was convicted of the inferior offense of betting upon a game of chance at a gambling resort. He appeals, and presents two grounds of error: (1) That the court erred in instructing the jury that the information charged a violation of the statute upon which the verdict was based, and (2) that the verdict should have been set aside because it was returned in the absence of the defendant. These contentions will be considered in their order.

The State v. Way.

The information was obviously drawn under section 2228 of the General Statutes of 1901, reading as follows:

"Every person who shall set up or keep any table or gambling device commonly called ABC, faro bank, EO, roulette, equality, keno, wheel of fortune, or any kind of gambling-table or gambling device, adapted, devised and designed for the purpose of playing any game of chance for money or property, or shall induce, entice or permit any person to bet or play at or upon any such gaming-table or gambling device, or at or upon any game played at or by means of such table or gambling device, either on the side of or against the keeper thereof, or shall keep a place or room to be used as a place for playing any game of cards for money or property, or keep a common gaming-house or keep a house, room or place to which persons are accustomed to resort for the purpose of gambling, shall on conviction be adjudged guilty of a felony, and punished by imprisonment and hard labor for a term not less than one year nor more than five years."

The verdict as obviously referred to section 2232 of the General Statutes of 1901, for it pronounced the defendant guilty of "betting money on a game of chance with cards and chips at a place where persons were accustomed to resort for gambling purposes." This section reads:

"Every person who shall either directly or indirectly bet any money or property at any common gaming-house, or at any place to which persons are accustomed to resort for gambling purposes, or at any place kept for the purpose of being used as a place for gambling, whether such betting be upon any game of skill or chance, either with or without cards or dice, or by use of any kind of device or contrivance whatsoever for determining chances, shall be guilty of a felony, and upon conviction shall be punished by imprisonment at hard labor in the penitentiary for a term not less than one year nor more than three years."

The information charged that the defendant "did . . . keep, set up and maintain . . . a gambling device and devices composed of playing-cards and

59—76 KAN.

red, white and blue celluloid chips, commonly known as poker chips, said cards and chips then and there being adapted, devised and designed for the purpose of playing a game and games of chance, commonly known as poker, for money and property, and . . . did . . . induce, solicit, request and permit persons to bet, offer and wager lawful money of the United States of America and to play, with and by means of said gambling device and devices, the game commonly known as poker with and against said defendants, and that through this gambling device, and devices, lawful and current money of the United States of America and property were lost and won by chance."

From this statement of the statutes, the information, and the verdict, it appears that the section upon which the conviction was had is directed against betting under certain circumstances, and that the defendant was not in direct and express terms charged with having bet upon anything. A conviction may always be had upon any less offense which is included within that charged (Gen. Stat. 1901, § 5564) ; or, as was said in *The State v. Burwell,* 34 Kan. 312, 8 Pac. 470, "wherever a person is charged upon information with the commission of an offense under one section of the statutes, and the offense as thus charged includes another offense under another section of the statutes, the defendant may be found guilty of either offense." (Syllabus.) Some liberality of interpretation is permitted in such cases. The rule is thus stated in volume 22 of the Cyclopedia of Law and Procedure, at page 467:

"While it is not necessary to make a specific charge of all the offenses included in the charge for which the indictment is drawn, a conviction cannot be had of a crime as included in the offense specifically charged unless the indictment in describing the major offense contains all the essential averments of the less, or the greater offense necessarily includes all the essential ingredients of the less."

In several instances it has been held that words used

in the statute defining the inferior offense need not be
used in the information, where the statements there
made in charging the greater offense necessarily show
the existence of all the facts essential to constitute
the less.    For example, a conviction under a statute
(Gen. Stat. 1901, § 2029) against administering med-
icine with the intent to procure abortion has been sus-
tained under an information which did not use the
word "abortion," being drawn under a statute for-
bidding the giving of medicine to a woman pregnant
with a quick child with the intent to destroy such child,
the reasoning being that the destruction of a quick
child necessarily involved the procuring of an abortion.
(*The State v. Watson,* 30 Kan. 281, 1 Pac. 770.)    The
exact question to be here determined is therefore
whether the acts charged in the information necessarily
involved those found in the verdict.    The allegations
that the defendant set up a gambling device and in-
duced persons to play for money by means thereof suf-
ficiently imply that the place where it was maintained
was one to which persons were accustomed to resort
for the purpose of gambling, and which was kept for
that purpose.    And to say that the defendant "did
.  .  .    induce  .  .  .    and permit persons to bet
.  .  .    and to play  .  .  .    by means of said gam-
bling device [cards and chips]  .  .  .    the game com-
monly known as poker with and against said defend-
ants  .  .  .    and that through this gambling device
.  .  .    money  .  .  .    and property were lost and
won by chance" is to say in effect that the defendant
bet money on a game of chance played with cards and
chips.

"If two persons play at cards for money, they are
said to be gambling or gaming; but they are gaming
because they lay a wager or make a bet on the result
of the game, and therefore to say they are betting is
equally appropriate." (*People v. Weithoff,* 51 Mich.
203, 210, 16 N. W. 442, 47 Am. Rep. 557.)

"The legal meaning of the term 'bet' is the mutual

agreement and tender of a gift of something valuable, which is to belong to one of the contending parties, according to the result of the trial of chance or skill, or both." (*Mayo v. State* [Tex. Crim. Rep.], 82 S. W. 515.)

If the defendant permitted others to play with him in a game at which money was lost and won by chance he necessarily bet money upon a game of chance. The court concludes that although the crime for which a conviction was had was not charged with the directness and distinctness that should ordinarily characterize criminal pleadings the defendant suffered no substantial prejudice thereby, all the essential constituents of that crime being included in the graver charge upon which the prosecution was primarily based.

The record shows these to have been the circumstances attending the reception of the verdict: The case was submitted to the jury at about 5 o'clock in the afternoon. At about 6 o'clock the court took a recess, as stated in the journal entry "to await the return of the verdict," or as recited in the bill of exceptions "contingent upon the incoming of said jury." At about 6:45 the jury announced that they had agreed and were brought into court. The defendant, who was out upon bond, was absent, as were also his attorneys. By order of the court the bailiff "went to the window and called in a loud voice" each of them, but none of them appeared. They had not been excused from attendance, and had left no word with the court as to where they could be found. The verdict was then received in their absence. The defendant, in support of a motion for a new trial, made an affidavit stating that in pursuance of the instructions of his attorneys he had held himself in readiness to be called and to be present whenever the jury should return, and that he was within half a block of the court-house when the verdict was received, but did not hear the bailiff call him.

It is clear from this statement that the defendant

was voluntarily absent from the court without permission, and thereby waived his right to be present when the verdict was received, if that right can ever be waived. The statute provides that "no person indicted or informed against for a felony [and the conviction here was for a felony] can be tried unless he be personally present during the trial." (Gen. Stat. 1901, § 5649.) The effect of the adjudications on the subject is thus stated in volume 12 of the Cyclopedia of Law and Procedure, at page 527:

"Some of the courts have held that the right to be present during the trial of an indictment for felony cannot be waived by defendant in a capital case, and some have applied the same rule in the case of any felony, whether capital or not, so that a trial or any . material step therein, or reception of the verdict, in defendant's absence in such cases is error, although he has escaped or is otherwise voluntarily absent. Most of the courts, however, have held that defendant may waive his right to be present when the felony is not capital; that he does so if, having been released on bail, he absconds or is voluntarily absent after his arraignment and plea, and that in such a case the trial may proceed and the verdict be received notwithstanding his absence."

In notes appended to this text the cases are very fully collected and classified. Some of those holding that a verdict may properly be received without the presence of the defendant if his absence is voluntary turn upon constitutional or statutory provisions less explicit than that quoted, which, however, is regarded as but declaratory of the common law. Other recent cases supporting the view that the defendant's conduct does not affect the matter are *Wells v. State*, 147 Ala. 140, 41 South. 630, from which it appears that in Alabama the reception of a verdict in the defendant's absence is tantamount to an acquittal, and *State of Utah v. W. A. Mannion*, 19 Utah, 505, 57 Pac. 543, 75 Am. St. Rep. 753, 45 L. R. A. 638, while *State v. McGinnis*, 12 Idaho, 336, 85 Pac. 1089, has a contrary

tendency. (See, also, notes in 5 L. R. A. 835 and 2 Am. St. Rep. 303.)

In *Commonwealth v. McCarthy*, 163 Mass. 458, 40 N. E. 766, which is based upon a statute substantially the same as ours, it was said:

"It is a general rule, both in England and in this country, that a trial for a felony cannot be had without the personal presence of the accused. . . . The trial is not concluded until the verdict is received and recorded. . . . In this commonwealth we have a statute which embodies the same general rule. Pub. Stat. c. 214, § 10. . . . Under this statute, as well as at the common law, it may well be held that when a defendant is in custody under an indictment for a felony the verdict cannot properly be taken in his case without his personal presence, even if he has been in attendance in all previous stages of the trial, and that whether he is in custody or on bail the trial cannot properly be begun in his absence. But whether a defendant who is on bail, and who has been present during his trial until the case has been given to the jury, can nullify the whole proceedings by absenting himself until it becomes necessary to discharge the jury, is a very different question. We have seen no well-considered case that decides this question in the affirmative. In most of the reported cases the defendant was in custody, and the failure of the authorities to have him present when the verdict was taken deprived him of a right. . . . But it has been repeatedly held, upon careful consideration, that while it is a right of the defendant indicted for a felony to be present when the verdict is rendered as well as during. the earlier parts of the trial, and while it is irregular and improper to begin the trial in such a case without the presence of the accused, yet if he is on bail and is present at the commencement of the trial, and afterward voluntarily departs without leave and is absent when the verdict is returned, he may be defaulted and a verdict which will be binding upon him may be taken in his absence. . . . Such a case is treated as an exception to the general rule, and as a waiver by the defendant of his right to be present. . . . It would be unreasonable to hold that he can attend until the case is given to the jury, and, when he sees indications that the verdict is to be against him, can make it im-

possible to complete the trial, and thus nullify all that has been done by absconding. If he could do this, it would be necessary upon his return to try him again *de novo,* when perhaps it would be impossible to procure the evidence which was introduced at the first trial, and when, if he were again admitted to bail, he might a second time defeat the ends of justice by again departing. His departure under such circumstances ought to be deemed a waiver of his right to be present at the taking of the verdict. If the commonwealth has done all that it can reasonably be required to do to secure him his rights, our statute, and the common law of which it is declaratory, ought not to be so construed as to prevent the return of the verdict. . . . No detriment can ever come to a defendant from this construction of our statute, and a different construction of it would make it in some cases an instrument of great injustice." (Pages 458-461.)

In *Frey v. Calhoun Circuit Judge,* 107 Mich. 130, 64 N. W. 1047, involving a similar statute, the court reached the same conclusion upon a full review of the authorities, saying:

"The general rule is that a trial for a felony cannot be had without the personal presence of the accused. We have a statute which recognizes and embodies this rule. 2 How. Stat. § 9568. It is also well settled that the trial is not concluded until the verdict is received and recorded. There are cases which hold that a verdict rendered in the absence of the prisoner, whether he be in custody or out on bail, is void. . . . Few cases will be found which go to this extent, and in nearly all of the cases where a verdict rendered in the absence of the accused has been held erroneous the respondent has been in custody, and has therefore been prevented from attending. When, however, the absence of the prisoner is not an enforced absence, but is voluntary, as when he is out on bail, and has been present during the trial, but voluntarily leaves the court room pending the deliberations of the jury, or neglects to appear at the adjourned hour of the court, the clear weight of authority favors the rule that a verdict rendered under such circumstances is valid and binding." (Page 131.)

The substance of the argument employed by the

Massachusetts court was thus forceably stated in *Barton v. The State,* 67 Ga. 653, 44 Am. Rep. 743:

"It is the right of the defendant in cases of felony . . . to be present at all stages of the trial—especially at the rendition of the verdict, and if he be in such custody and confinement by the court as not to be present unless sent for and relieved by the court, the reception of the verdict during such compulsory absence is so illegal as to necessitate the setting it aside on a motion therefor. . . . The principle thus ruled is good sense and sound law; because he cannot exercise the right to be present at the rendition of the verdict when in jail, unless the officer of the court brings him into the court by its order.

"But the case is quite different when, after being present through the progress of the trial and up to the dismissal of the jury to their room, he voluntarily absents himself from the court room, where he and his bail obligated themselves that he should be. . . . And the absolute necessity of the distinction, or the abolition of the continuance of the bail when the trial begins, is seen, when it is considered that otherwise there could be no conviction of any defendant unless he wished to be present at the time the verdict is rendered.

"From the charge of the court, from the countenances of the jury, from the course of the argument, from the hints or misgivings of counsel, from information leaking out of the jury-room, the defendant might see that the jury would convict him, and absent himself until the verdict was rendered, and thus have its rendition made entirely nugatory by his own act.

"The forfeiture of the bond is nothing. Appearance at the next term would save his bail, and trivial costs only would be the penalty paid, while the whole case must be tried again or the defendant be discharged altogether.

"A second trial at the next term could be made at his option to result in the same way at the same trivial costs, and so on *ad infinitum.* Can this be the law? We think that it cannot be is as certain as that it ought not to be." (Pages 644, 645.)

There seems to be no escape from the force of this reasoning. It is true that in Kansas the bail is only exonerated from liability upon surrendering his prin-

The State v. Way.

cipal after a default if he presents a satisfactory excuse therefor. (Gen. Stat. 1901, § 5591.)   But this results from a recent amendment, and therefore cannot affect the interpretation of the statue under consideration.   That the practical evils of the rule so vigorously denounced by the Georgia court are not exaggerated is shown by what was said of its application in *People v. Beauchamp*, 49 Cal. 41:

"It appeared that the verdict by which the prisoner was found guilty of the felony charged in the indictment had been received by the court below, and recorded in its minutes, and the jury discharged, while the prisoner was not personally present in court.   The statute (Penal Code, § 1148) distinctly provides that, in order to the validity of such a verdict, the prisoner must be personally present in court when it is returned.   In this case the prisoner seems to have absconded after the cause was given to the jury, and before their return into court.   The growing frequency of occurrences of this character, thwarting the administration of criminal justice, would suggest the propriety in all trials for felony of promptly ordering the prisoner, regardless of his previous admission to bail, into actual custody, at the commencement of the trial, or immediately upon the retirement of the jury to consider their verdict."   (Page 41.)

The supreme court of Missouri, from which state the statute was transplanted to Kansas in 1855, held that under it the voluntary absence of the defendant in a felony prosecution vitiated the verdict (*State v. Braunschweig*, 36 Mo. 397), but the decision was not made until 1865 and therefore has no controlling force here.   The law was subsequently changed by legislation, the proviso being added "that in all cases the verdict of the jury may be received by the court, and entered upon the records thereof, in the absence of the defendant, when such absence on his part is wilful and voluntary."   (Rev. Stat. Mo. 1879, § 1891.)   This addition is said to have been made "to prevent a defendant from securing a mistrial and continuance by escaping if in custody or absconding if on bail, after

the cause has been submitted to the jury and before verdict rendered." (*The State v. Hope*, 100 Mo. 347, 358, 13 S. W. 490, 8 L. R. A. 608.)

The question has not heretofore been directly passed upon by this court. In *The State v. Adams*, 20 Kan. 311, 326, in holding that a defendant could waive his constitutional privilege to appear and defend in person in all prosecutions, attention was called to the difference between the language of the constitution and that of the statute—in the one case "he shall be *allowed*," in the other "no person *can* be tried." But no ruling was necessary or was made against the right to waive the benefit of the statutory provision. In *The State v. Myrick*, 38 Kan. 238, 16 Pac. 330, it was held that the absence of the defendant during a part of a felony trial was not cured by the presence of his counsel and their consent to the proceedings. There, however, the defendant was at the time confined in the county jail and knew nothing of the matter. To hold that 'his statutory privilege could be regarded as waived under such circumstances would be to say that representation by an attorney is in all respects a complete substitute for personal presence, the right to which is guaranteed by the statute. In *The State v. Smith*, 44 Kan. 75, 24 Pac. 84, 8 L. R. A. 774, 21 Am. St. Rep. 266, *The State v. Jarrett*, 46 Kan. 754, 27 Pac. 146, and *The State v. Clifton*, 57 Kan. 448, 46 Pac. 715, which follow the Myrick case, the defendants were all in confinement while the proceedings complained of took place. In *The State v. Moran*, 46 Kan. 318, 26 Pac. 754, the verdict was set aside because a witness had been permitted to testify in the absence of the defendant. The decision is rested squarely upon *The State v. Myrick*, without further discussion, and fails to disclose any intention to enlarge the doctrine of that case. The report does not clearly show whether or not the defendant was in custody, but the record indicates that he had given bail. However, the opinion recites that he was absent with the consent of the court,

and the record contains the statement that his absence was necessary. The situation was therefore entirely different from that here presented. Excusing the defendant temporarily from attendance upon the court for a necessary purpose fairly implies that the trial is not to be proceeded with until his return. He would be justified in so understanding, and his withdrawing under such circumstances cannot be said to be a voluntary absence during a part of the trial. So in *The State v. Muir*, 32 Kan. 481, 4 Pac. 812 (a misdemeanor case), it was held to be error to receive a verdict on Sunday in the absence of the defendant and his counsel, without their being called, but expressly upon the ground that except upon notice they were not bound to be in attendance upon the court on a non-judicial day.

The question therefore being an open one in this state, the court prefers to follow what is clearly the weight of authority as well as what seems to be the better reason and to decide that the right of the defendant to be present during a felony trial is one that may be waived, and that if while at liberty on bond he is voluntarily absent, without having been excused by the court, when the jury reach an agreement a verdict against him may lawfully be received in his absence. On all accounts reasonable exertion should always be made to procure the attendance of the defendant, but it cannot be said that in the present instance any effort in that direction was omitted to which he was entitled as a matter of right.

The judgment is affirmed.