**STATE of Missouri, Respondent,**

v.

**James Edward DROPE, Appellant.**

**No. 55489.**

Supreme Court of Missouri, Division No. 2.

Jan. 11, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 8, 1971.

John C. Danforth, Atty. Gen., Thomas H. Stahl, Asst. Atty. Gen., Jefferson City, for respondent.

Lester Watson, Richmond Heights, for appellant.

STOCKARD, Commissioner.

Charged as a second offender, defendant was found guilty by a jury of rape. The court assessed the punishment at life imprisonment.

The evidence presented by the State permitted a finding by the jury that on January 17, 1969, defendant and four other men, cooperating together, tied defendant's wife to a bed, and while defendant held a gun at her head, each had sexual intercourse with her against her will and with force and violence to her person.

Defendant first contends that his motion for a verdict of acquittal should have been sustained because "the State failed to produce sufficient evidence to sustain the indictment in that defendant was not charged with aiding and abetting others in the commission of the crime of rape, and he himself, could not be charged with raping his own wife."

The statutory definition of rape, § 559.260, RSMo 1969, V.A.M.S., does not by express language exclude the accused's wife as a person upon whom the crime may be committed. However, for the purposes of this opinion we shall assume that the statute incorporates the common law rule that a husband cannot be guilty of rape based upon his forceful intercourse against the will of his wife. See 84 A.L.R.2d at p. 1019.

■ Defendant was charged as a principal in that he and others "did unlawfully and feloniously make an assault" upon his wife and "did then and there unlawfully, feloniously and forcibly rape, ravish and carnally know [her] against her will." It is provided in § 556.170, RSMo 1969, V.A. M.S., that a principal in the second degree in the commission of any felony "may be charged, tried, convicted and punished in the same manner, as the principal in the first degree." One who is present at the place of the crime and aids and abets the perpetrator thereof is a principal in the second degree. 22 C.J.S. Criminal Law § 85; 21 Am.Jur.2d Criminal Law, § 121. As such, he may be charged and tried as a principal in the first degree, § 556.170, supra; State v. Murray, Mo., 445 S.W.2d 296, 298; State v. Sheard, Mo., 276 S.W.2d 191, without setting out in the charge the facts by which he aided and abetted, 42 C.J.S. Indictments and Informations § 147, and without alleging a conspiracy. State v. Reed, Mo., 453 S.W.2d 946. The charge of defendant as a principal was authorized.

■ Defendant argues, however, that to charge him as a principal results in uncertainty as to the charged offense, and that one reading the statute pertaining to rape would not know that the conduct of defendant relied on by the State would constitute a violation of that statute. This implies a reliance on § 18(a), Art. I, Constitution of Missouri, V.A.M.S. wherein it is provided that an accused has the right "to demand the nature and cause of the accusation." In State v. Spica, Mo., 389 S.W.2d 35, a similar contention was made when the defendant, being an accessory before the fact, was charged as a principal pursuant to § 556.170, supra. It was held that such a charge does not infringe the above constitutional provision. The same is true when the basis for the charge as a principal pursuant to the statute was conduct which resulted in the accused being a principal in the second degree.

■ Defendant argues that in no event could he be found guilty of rape of his wife, even though the basis of the charge was that he aided and abetted another in the commission of the offense. One not the husband of the victim can be found guilty of rape on the basis of aiding and abetting even though he does not engage in the act of sexual intercourse. State v. Sheard, supra. No Missouri case is cited to us, and we have found none, holding that as an aider and abettor a husband may be found guilty of the rape of his wife. However, the issue has been ruled in other states.

In an annotation entitled "Criminal responsibility of one cooperating in offense which he is incapable of committing personally," 131 A.L.R. 1322, rape cases are annotated in which the conviction of the husband of rape for aiding and abetting another was held proper. In another annotation at 84 A.L.R.2d 1017, entitled "Criminal responsibility of husband for rape, or assault to commit rape, on wife," the general rule is stated that "While a husband may, without criminal liability for rape, enforce sexual connection for himself upon his wife despite her actual denial of his right, he may not enforce sexual intercourse upon her through the instrumentality of another man." Cases are then cited in which it is held that a husband who does so may be charged and found guilty of the crime of rape. Cases so holding include the following: People v. Chapman, 62 Mich. 280, 28 N.W. 896, 4 Am.St.Rep. 857; In re Kantrowitz, 24 Cal.App. 203, 140 P. 1078; Kitchen v. State, 101 Tex.Cr.R. 439, 276 S.W. 252; Bohanon v. State, Okl.Cr., 289 P.2d 400; Cody v. State, Okl.Cr., 361 P.2d 307, 84 A.L.R.2d 997; Elliott v. State, 190 Ga. 803, 10 S.E.2d 843; State v. Boyland, 24 Kan. 186; State v. Olsen, 138 Or. 666, 7 P.2d 792 (dicta); People v. Damen, 28 Ill.2d 464, 193 N.E.2d 25; State v. Digman, 121 W.Va. 499, 5 S.E.2d 113; State v. Blackwell, 241 Or. 528, 407 P.2d 617. We have not found any case disapproving the above general rule.

We conclude that defendant was properly charged, and that under the facts of this case he was properly found guilty of rape even though the victim was his wife.

Defendant next contends that the "verdict was against the weight of the evidence." Our brief statement of the facts, and the ruling on defendant's first point, demonstrates that a submissible case was made. The determination of the credibility of the witnesses is for the jury, and an appellate court does not weigh the evidence. State v. Dowe, Mo., 432 S.W.2d 272. This point presents no issue for appellate review.

Defendant's third and fifth points are that the court erred in proceeding with the trial when he was absent, and that there was "no evidence upon the record" that he voluntarily absented himself from the trial.

The trial started on June 23, 1969. On June 29, after the testimony of four witnesses had been taken, the court recessed the proceedings. Defendant was free on bond, and the following morning he did not appear in court. The record shows that the court stated to the jury that "We were delayed through no fault of either the Court or the attorneys," and that defendant's counsel then moved for a mis-trial "in view of the fact that the defendant * * * shot himself this morning." The court then stated that it had "already decided that the matter would proceed for trial," thereby implying that the matter had previously been discussed, apparently in chambers or at least off the record. When defense counsel stated that it would be difficult "to go to trial without a client," the court stated: "That is the difficulty * * * that your client brought about, not you, not the court. He was on bond and his responsibility [is] to be here. So the Court will proceed with the case." Four additional witnesses were then heard. In addition, the hearing was held to prove the prior conviction. During this testimony in the absence of defendant, his counsel was present and participated in the trial by entering objections and by cross-examination.

In defendant's motion for new trial, error was assigned in proceeding with the trial while he was absent. A hearing was held in which defendant testified that on the morning of June 25 he had gone to his brother's house to change clothes, and that he remembered nothing concerning the circumstances of being shot except that he felt a burning pain in his stomach and later woke up in the hospital. He denied making any statements that he had shot himself to avoid attending trial. The police officer who investigated the matter testified that at the hospital he talked to defendant who told him, in the words of the officer, that "he

was supposed to go to court for rape, and he didn't do it; he [would] rather be dead than go to trial for something he didn't do. So he got his rifle out of his basement and went to the garage and shot himself." In ruling on the motion for new trial, the court found that defendant intentionally shot himself to avoid attending the trial.

■ We disagree with defendant's contention that there is "no evidence upon the record" that he voluntarily absented himself. The court made such a determination before proceeding with the trial, although the basis for that determination is not fully disclosed. However, when defendant is free on bond, and he does not appear at the appointed time, it is presumed that the absence is voluntary until established otherwise. People v. Steenbergen, 31 Ill.2d 615, 203 N.E.2d 404, certiorari denied 382 U.S. 853, 86 S.Ct. 104, 15 L.Ed.2d 92; State v. Cumbo, 96 Ariz. 385, 396 P.2d 11; Cox v. Hand, 185 Kan. 780, 347 P.2d 265, certiorari denied 363 U.S. 822, 80 S.Ct. 1265, 4 L.Ed.2d 1520. In any event, the circumstances were presented in full at the hearing on the motion for new trial, and the trial court affirmatively found that defendant did voluntarily absent himself. We find no reason to disagree with the evaluation by the trial court of the testimony on this issue, and we give due deference to its findings and conclusion. We shall, therefore, rule this issue on the basis that, as the trial court found, defendant voluntarily and intentionally inflicted a wound on himself with the intent to make his presence at the trial impossible.

Art. I, 18(a), Constitution of Missouri, V.A.M.S., provides that "the accused shall have the right to appear and defend, in person and by counsel," and Supreme Court Rule 29.02, V.A.M.R., provides that no person shall be tried upon an indictment or information for a felony unless he be personally present during the trial. However, Supreme Court Rule 29.03 states that in all cases the verdict of the jury may be received by the court and entered upon the record in the absence of the defendant, when such absence is willful or voluntary on the part of defendant. See also § 546.-030, RSMo 1969, V.A.M.S. As to the constitutionality of the provisions of Rule 29.-03, see State v. Hope, 100 Mo. 347, 13 S.W. 490, 8 L.R.A. 608.

In this case the defendant was absent at the time the verdict of the jury was received, but such action by the court in receiving the verdict is expressly authorized, under the factual circumstances of this case, by Supreme Court Rule 29.03, and by analogy defendant's contention is ruled by State v. McCrary, 365 Mo. 799, 287 S.W.2d 785. In that case the defendant voluntarily absented himself from the courtroom when the trial judge declared a mistrial and discharged the jury on the basis that it could not reach a verdict. See also the cases cited in the annotation entitled, "Absence of accused at return of verdict in felony cases," 23 A.L.R.2d 456, and particularly the cases cited in § 10 of the annotation, p. 478 et seq., pertaining to the waiver of the right to be present when the defendant voluntarily absents himself. We find no merit to the contention that prejudicial error resulted when the trial court received the verdict of the jury when defendant was absent.

In this case, however, defendant was also absent during a portion of the trial when witnesses for the State testified in support of the charge against him, and also when evidence was heard on an essential phase of the trial; the proof of the previous conviction to invoke the second offender act. See State v. Colbert, Mo., 344 S.W.2d 115. The essential questions are whether Supreme Court Rule 29.02 permits a waiver by defendant of his right to be present at those phases of his trial, and also whether by voluntarily absenting himself, a defendant can waive his constitutional right to be present.

■ In State v. Smith, 90 Mo. 37, 1 S.W. 753 (reported in the latter citation under a different name), 59 Am.Rep. 4,

the defendant was absent during the entire voir dire examination of the jury and also at some preceding stages of the trial. The circumstances which brought about the absence was not shown, but it was ruled that the public had an interest in the trial of criminal cases, and that even if the defendant's absence be considered voluntary, there could be no waiver. It was stated that the expression of the one exception in the statute (now § 546.030 and contained in Rule 29.03), permitting the court to receive a verdict during a voluntary or willful absence of the defendant, excluded all authority to take other steps in defendant's absence. However, in State v. Brewer, 109 Mo. 648, 19 S.W. 96, it was said that the Smith case "went to the extreme," and in State v. Hope, supra, in discussing the provision now in Rule 29.03 authorizing a verdict to be received in the absence of the defendant, the court indicated that the provision was a recognition and expression of the common law waiver by defendant of a right which he had, that is, to be present at all phases of his trial. In other cases it has been held that brief absences of a defendant during the taking of evidence or during argument did not constitute prejudicial error. See State v. Gonce, 87 Mo. 627; State v. Bell, 70 Mo. 633; State v. Grate, 68 Mo. 22; and the annotation at 100 A.L.R. 480. However, the rulings ·seem to have been based, at least in part, on a finding that prejudice did not result, and such was the conclusion in State v. Murphy, 292 Mo. 275, 237 S.W. 529, even though it was also said that his presence "could not be waived" by defendant. In State v. McCrary, supra, defendant was absent voluntarily when the court declared a mistrial, which is not within the exception set forth in Rule 29.03. This court reviewed in detail the history of the statutory provisions as now contained in § 546.030, and restated in the above cited rules, and said this: "We think that the present wording of our statute, § 546.030, [and Rule 29.03] permitting the reception of a verdict during the voluntary or willful absence of the defendant is declaratory of a policy that such *rights* may be waived. We do not· agree with the statements in State v. Smith, supra, that the expression of that exception necessarily excludes all other exceptions, and that in no other instance may the actual presence of defendant be waived. * * * We do not believe that the legislature meant to say that the defendant must, in all events, be present at every other stage of the trial." The court then continued as follows: "But to hold that a defendant, who is at liberty during the trial, must in all events be present at every material step, is to place in his hands the power completely to nullify the trial. If he should absent himself and remain away the court would simply have to suspend all proceedings, and eventually discharge the jury and declare a mistrial. * * * Such a result is to us unthinkable. It is the duty of such a defendant 'to wait upon the court,' and to be present at all times when he may anticipate that proceedings might take place; * * *." These views expressed in the McCrary case were reaffirmed in State v. Colbert, supra, a case in which the defendant was absent at a phase of the trial other than the receipt of the verdict, and it was further stated: "The administration of justice will not best be promoted by requiring a rigid and unyielding conformance to Rule 29.02 (first clause of § 546.030), in all cases and regardless of the circumstances. Inevitably exceptional cases calling for amelioration will arise. In justice it must be held that under the particular circumstances under review appellant failed to exercise and therefore waived his right and privilege to be present." In both of these cases the absence of the defendant was the result of inattention or negligence. In the case under consideration, however, the absence of the defendant resulted from an intentional act by him done for the express purpose of preventing his presence at the trial, and we conclude such act constituted a waiver of defendant to his right to be present.

This conclusion is in accord with the general rule as applied in other states and by the federal courts.

In the recent case of State of Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed. 2d 353, the United States Supreme Court stated that the Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *," and that the guarantees of this clause is obligatory upon the States. However, it was then held that an accused cannot claim the benefit of this "most basic" right while at the same time engage in disruptive conduct that makes it exceedingly difficult or impossible to carry on the trial. In the opinion in the Allen case, Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500, was cited with approval for the proposition that the court had "expressly rejected" the contention that a trial can never continue in defendant's absence. In addition, the court quoted with approval from Snyder v. State of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674, that "'the privilege [of personally confronting witnesses] may be lost by consent or at times even by misconduct.'" In the Diaz case, the Supreme Court quoted from Falk v. United States, 15 D.C.App. 446, 454, appeal dismissed, 180 U.S. 636, 21 S.Ct. 922, 45 L.Ed. 709, a case where the accused appeared for trial but fled the jurisdiction before the trial was completed, as follows:

"'It does not seem to us to be consonant with the dictates of common sense that an accused person * * * should be at liberty, whenever he pleases, * * * to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it * * * This would be a travesty of justice which could not be tolerated. * * * [W]e do not think

that any rule of law or constitutional principle leads us to any conclusion that would be so disastrous as well to the administration of justice as to the true interests of civil liberty. * * *

"'The question is one of broad public policy, whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries, and turn them into solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty. Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong.'"

For a few of the cases from other jurisdictions following the rule here advanced, see State of Arizona v. Hunt, 6 Cir., 408 F.2d 1086; Cureton v. United States, 130 U.S.App.D.C. 22, 396 F.2d 671; State v. Taylor, 104 Ariz. 264, 451 P.2d 312; State v. Cumbo, supra; People v. Steenbergen, supra; State v. Chuning, 201 Kan. 784, 443 P.2d 248, certiorari denied 393 U.S. 1069, 89 S.Ct. 726, 21 L.Ed.2d 712; State v. Way, 76 Kan. 928, 93 P. 159, 14 L.R.A., N.S., 603; Cox v. Hand, supra.

We note that this is a capital case that the record does not show a waiver of the death penalty, but that capital punishment was not imposed. Some authorities seem to distinguish between a waiver of the right to be present in capital cases and in felony cases generally. See the annotation at 23 A.L.R.2d 491; 23 C.J.S. Criminal Law § 975; and 21 Am.Jur.2d, Criminal Law § 286. Federal Rule 43 for criminal procedure in the federal courts, expressly excludes waiver of the right to be present in capital cases. However, we agree with the previous statement of this court in State v. McCrary, supra, and with the ruling in Boreing v. Beard, 226 Ky. 47, 10 S.W.2d 447, that there is no logical

basis for the distinction, absent a statute or rule on the matter. The State is interested in all felony prosecutions, and it is as much the duty of the courts in the prosecution of felony cases generally to protect the liberty of accused persons as it is their duty to protect the rights of one accused of a capital offense. As noted in the McCrary case, the legislature, in amending the statute, now § 546.030, in 1879 to authorize the entry of a verdict when the defendant voluntarily absented himself, made no distinction between capital cases and other felony cases, and we consider that a declaration of the public policy of this State.

Defendant next assigns as error the refusal of the trial court to grant a continuance "to procure additional psychiatric evaluation."

It appears from the record that an improper, or insufficient, motion for a psychiatric examination was filed in the assignment division of the circuit court along with a request for a continuance to September 1969. The request for the continuance to September was overruled, but the case was continued to June 23. Based on a colloquy between the trial court and defense counsel at the time of trial, it appears that the assignment judge advised defense counsel that if he seriously contended that defendant needed psychiatric help he should file a proper motion, but it was never filed. On June 23, after the jury panel had been sworn on voir dire, and by implication after a discussion had been held off the record concerning the matter, defense counsel requested a continuance to September. According to the statement made by counsel to the trial court, the defendant had previously been examined by a psychiatrist who had recommended further examination, evaluation and psychiatric treatment. This report of the psychiatrist is not in the record. Whether it was called to the attention of the assignment judge does not appear. The trial judge commented on what had transpired, and stated, "let the record show they [presumably defense counsel] went back to [the assignment judge], and after being in there fifteen or twenty minutes, [he] has refused to grant a continuance." The trial court directed that they proceed, and stated that "before the jury is sworn in, I am going to ask [the assignment judge] to review this statement." There is no further ruling by the trial court on this matter prior to the time the jury was sworn in, and it is therefore presumed that the trial court's conference with the assignment judge resulted in its determination to proceed with the trial.

In the argument in his brief defendant seems to base his contention that error resulted in denying the request for a continuance on the basis that additional psychiatric care would take substantial time, and that the time was needed to prepare for trial. There is no contention in the brief that defendant did not have the mental capacity to proceed with the trial.

The granting of a continuance rests largely within the discretion of the trial court, State v. Boykins, Mo., 399 S.W. 2d 70, and an appellate court should interfere with the trial court's action only where a clear abuse of discretion is shown. State v. Thomas, Mo., 433 S.W.2d 537. The record does not demonstrate an abuse of discretion.

The final contention is that the punishment assessed is cruel and inhuman.

This court has repeatedly held that a sentence within the limits fixed by the legislature is not, without something else being shown, to be considered to be in violation of the constitutional limitation prohibiting cruel and unusual punishment. State v. Brownridge, Mo., 353 S.W.2d 715; State v. Cook, Mo., 440 S.W.2d 461. See also the annotation at 33 A.L.R. 2d 335, 368–369 of cases holding that the length of sentences alone, within the legislative prescribed limits, do not result in a violation of constitutional provisions prohibiting cruel and unusual punishment. It cannot be said that the facts of this case,

when considered by the trial court in assessing the punishment, could not reasonably call for the severe punishment imposed. In the absence of circumstances other than the severity of the punishment, we are constrained to rule that the punishment does not exceed constitutional limitations.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.