THE PEOPLE *ex rel.* P. J. Lucey, Attorney General, Petitioner, *vs.* ROBERT E. TURNEY, Judge, Respondent.

*Opinion filed June 22, 1916.*

1. COURTS—*reason why court vacated judgment has no bearing upon question of jurisdiction.* The reason why the court vacated a judgment and sentence has no bearing upon the question of its jurisdiction to enter the order.

2. MANDAMUS—*when awarding of writ of mandamus does not amount to granting writ of error.* Awarding a writ of *mandamus* at the suit of the People to compel a judge to expunge from the record an order vacating a judgment and sentence, which order is alleged to be void for want of jurisdiction, does not amount to the. granting of a writ of error to review the propriety and justice of the order.

3. SAME—*when a petition for mandamus shows that public interest is involved.* A petition for *mandamus* to compel a judge to expunge an alleged void order vacating a judgment and sentence shows that public interest is involved, where it is alleged that the course followed is in accordance with an illegal practice which has grown up of entering such orders and with the aid of a writ of *habeas corpus ad testificandum* discharging prisoners or releasing them on probation after their commitment to the penitentiary or State reformatory, in disregard of the pardoning power of the executive department of the State.

4. SAME—*when petition for mandamus does not seek for double relief.* A petition for *mandamus* to compel a judge to expunge an alleged void order vacating a judgment and sentence and to return the prisoner to the custody of the superintendent of the State reformatory is not demurrable on the ground it seeks double relief.

5. CRIMINAL LAW—*limit of rule that court may vacate judgment during term.* In criminal cases the general rule that a court may vacate its judgments during the term applies only while the judgment remains unexecuted, but it has no power to do so after the defendant has been sentenced and committed to the custody of the proper officer of the penitentiary or reformatory, as the defendant has then entered upon the execution of his sentence and the court has lost jurisdiction of his person.

6. SAME—*when writ of habeas corpus ad testificandum should be quashed.* A writ of *habeas corpus ad testificandum,* the only purpose of which is to procure the attendance of a prisoner at the hearing of a motion to vacate his judgment of conviction and sentence, which motion is pending before the judge who presided at the trial, should be quashed on motion of the Attorney General, as

the trial judge is bound to know there was nothing to which the prisoner need ·testify on such hearing. ·

7. SAME—*court cannot take prisoner from custody of officer on a writ of habeas corpus ad testificandum.* Even where a writ of *habeas corpus ad testificandum* is properly issued to procure the attendance of a prisoner as a material witness in some pending cause, the appearance of the prisoner does not give the court jurisdiction over him as a defendant in the case in which he was convicted, and the court has no power to take him from the custody of the proper officer of the penitentiary or reformatory and deliver him to the custody of the sheriff.

ORIGINAL petition for *mandamus*.

P. J. LUCEY, Attorney General, (THOMAS J. O'HARE, of counsel,) for petitioner.

TIMOTHY J. FELL, and HERMANN P. HAASE, for respondent.·

Mr. JUSTICE COOKE delivered the opinion of the court:

At the April, 1916, term this petition was filed by leave of court, praying for a writ of *mandamus* against the respondent, Robert E. Turney, Judge of the superior court and *ex-officio* judge of the criminal court of Cook county, commanding him forthwith to enter an order in a cause pending in said criminal court entitled, "The People of the State of Illinois *vs.* Charles Letukas *et al.*," expunging from the record of said cause an order entered April 5, 1916, vacating the judgment theretofore entered adjudging the said Charles Letukas to be guilty of the crime of robbery and the sentence imposed that he be confined in the Illinois reformatory at Pontiac until he should be discharged according to law, and setting aside the verdict of guilty theretofore found against Letukas and granting him a new trial, and ordering and directing John E. Traeger, sheriff of Cook county, to take the body of said ·Letukas from the custody of the superintendent of the Illinois reformatory at Pontiac and to keep him in his custody.

The petition alleges that Charles Letukas and Ignatz Lakowski were at the December, 1915, term of the criminal court of Cook county jointly indicted for the crime of robbery, and on the 11th day of January, 1916, being one of the days of the January term of said court, were duly convicted thereof, and on that day the said Letukas was duly adjudged guilty of the crime of robbery (the said Robert E. Turney, judge of the superior court, presiding,) upon said verdict of guilty and was sentenced to the Illinois State reformatory at Pontiac for a term of years, not to exceed the maximum fixed by the statute for the crime of robbery, and it was also ordered and adjudged that said Letukas be taken from the bar of said court to the common jail of Cook county and from thence by the sheriff to the Illinois State reformatory at Pontiac and delivered to the superintendent of said reformatory, and said superintendent was commanded to confine said Letukas in said reformatory in safe and secure custody until discharged according to law, which said judgment and sentence of the criminal court were on that day duly entered of record, the said judgment being set forth in the petition *in hæc verba;* that immediately thereupon, and in pursuance of such judgment and sentence, Letukas was taken by the sheriff from the bar of the court to the common jail of Cook county, and thereafter, on January 12, 1916, a certified copy of said judgment and sentence was placed in the hands of the sheriff for execution; that on January 20, 1916, Letukas was taken by the sheriff to the Illinois State reformatory at Pontiac and there delivered to the superintendent of said institution, who received him pursuant to such judgment and sentence; that on January 29, 1916, being one of the days of the January, 1916, term of said court, counsel for Letukas appeared, the respondent presiding as judge, and presented a motion on his behalf to set aside the verdict of the jury theretofore entered in said cause and vacate the said judgment and sentence so pronounced and entered

thereon and to grant a new trial, and the respondent, on said January 29, 1916, directed the motion to be entered and continued the same until February 5, 1916, one of the days of the February, 1916, term of said court; that on that day the cause was continued to February 19, 1916, and again on the last mentioned date it was continued until February 26; that on February 23 the State's attorney of Cook county presented to Hon. William E. Dever, as one of the judges of the superior court and *ex-officio* judge of said criminal court, a petition purporting to be a petition for a writ of *habeas corpus ad testificandum* to be directed to the superintendent of the Illinois State reformatory at Pontiac to produce the body of Letukas before respondent on February 26, 1916, the petition setting up that the cause entitled The People *vs.* Charles Letukas had been set for trial on that day and that at the trial the said Letukas was a material and necessary witness and that the cause of the People could not be properly presented without his testimony; that the writ of *habeas corpus ad testificandum* was duly issued and served upon the superintendent of the reformatory, and Letukas was produced before respondent, presiding as one of the judges of the criminal court of Cook county, on February 26, 1916; that the superintendent of the reformatory gave notice to the Attorney General of the service of said writ upon him and the character thereof, and the Attorney General appeared on the return day before respondent in opposition to the use of the writ of *habeas corpus ad testificandum* for any purpose other than that provided by statute, and also in opposition to the consideration or allowance by the court of the motion to vacate the final judgment and sentence theretofore pronounced against Letukas; that upon the hearing, respondent, as such judge, stated that he was of the opinion, from his own recollection of the trial, that the defense of Letukas might have been improperly presented and that he was entitled to a vacation of the judgment and sentence

of imprisonment theretofore pronounced against him and a further opportunity to present his defense or to a release upon probation, and as he was further of the opinion that the power to vacate such judgment and sentence rested in the court because a motion theretofore had been interposed during the judgment term and continued from time to time, but as the validity of such practice had been assailed, it was desirable that all questions with respect to the same should be definitely settled by the Supreme Court, and he continued the motion to vacate judgment and sentence until April 5, 1916, to afford an opportunity to present the matter to this court; that thereafter, on April 5, 1916, the superintendent of the reformatory again produced the body of Letukas before respondent as such judge, when the Attorney General moved to quash the writ of *habeas corpus ad testificandum,* which motion was overruled; that thereupon, the motion to vacate the said judgment and sentence coming on to be heard, the Attorney General objected to the exercise by the court of any jurisdiction save to deny the motion or to expunge all orders made in connection therewith; that the cross-motion was denied and the motion to vacate the judgment and sentence theretofore pronounced against Letukas was allowed; that an order was entered vacating such judgment and sentence, setting aside the verdict of guilty and granting a new trial; that the court thereupon ordered and directed the sheriff of Cook county to take the body of Letukas into custody and keep him in the common jail of Cook county until discharged by due course of law, which order the sheriff proceeded to execute over the protest of the superintendent of the reformatory and the Attorney General; that the Attorney General then moved the court to expunge from the records the order vacating said judgment and sentence and setting aside the verdict and granting a new trial, which motion was overruled.

To the petition respondent interposed a demurrer and the cause was submitted upon the demurrer. The grounds of demurrer which are relied upon are, (1) that *mandamus* is not a proper remedy; and (2) that the court had authority and jurisdiction to set aside the judgment of conviction and vacate the order sentencing Charles Letukas, as the motion therefor was made during the term at which the judgment and sentence were entered.

It is insisted that *mandamus* is not a proper remedy as the public interests would be injuriously affected by the issuance of the writ, and the issuance of the writ would compel the performance of an act which will work a public and private mischief. This contention is grounded upon the allegation in the petition that respondent, from his own recollection of the case, was of the opinion that Letukas was not properly or adequately defended and that he may have been innocent. It is immaterial what reason actuated respondent in vacating the judgment and sentence theretofore entered, as it could have no bearing whatever upon the question of his jurisdiction to enter such order. As to whether the public interests would be affected, it will suffice to quote the following from the petition: "And the People of the State of Illinois, on the relation of said Attorney General of Illinois, do further complain and show unto this honorable court that a practice has grown up in said criminal court of Cook county, and has obtained a recognized standing in said court by reason of long continued indulgence therein, of causing, allowing and permitting motions to vacate final judgments and sentences of imprisonment theretofore pronounced and entered of record to be entered of record in said criminal court of Cook county after such judgments and sentences have gone into execution, and of thereafter considering such motions and vacating and setting aside such final judgments and sentences so pronounced, and by the use and by means of the aforesaid writ of *habeas corpus ad testificandum* to procure the at-

tendance of the convict or prisoner so serving such sentence, ostensibly to testify in the case in which he was theretofore convicted but in reality to lend color to the supposed jurisdiction of the court to vacate, annul and set aside such final judgments and sentences of imprisonment imposed against him, and upon the attendance of said convict in court, upon and in virtue of the aforesaid writ of *habeas corpus ad testificandum,* the aforesaid practice of said criminal court of Cook county has gone to the extent of the court not only granting and allowing such motions to vacate and vacating and setting aside of said final judgments and sentences and allowing new trials, but allowing the convict or prisoner to go upon probation, so-called, or permitting the *nolle prosequi* of the charge upon which such convict or prisoner was theretofore tried and convicted, thereby in either instance giving the said convict or prisoner his liberty if not complete exoneration, thereby invading the power and authority of the executive department of the State by, in effect, granting pardons and commutations of sentences, in violation of the constitution of the State, and devoting the writ of *habeas corpus ad testificandum* to purposes other than those for which it was designed and intended." In their brief and upon oral argument counsel for respondent admit the truth of this allegation, and urge that as this custom has been one of long standing the practice should be approved, even though it may be contrary to the letter of the law. The mere fact that such a practice may have existed in the courts of Cook county for a long time does not preclude an inquiry into its validity or prevent the granting of relief by *mandamus.*

It is contended that the issuance of the writ in this case would amount to the issuance of a writ of error, and that if the contention of the People that the writ will lie to expunge this order from the record is sound, then the People might use the same means to review the action of the court in any criminal case where the State's attorney be-

lieves that the court has acted erroneously, such as granting the defendant a new trial. This by no means follows. The writ lies here because of a question as to the jurisdiction of the court to enter the order vacating the judgment against Letukas, and not to determine its propriety or justice. There can be no question of the right of the court to enter an order granting or refusing a new trial.

The claim that the petition is demurrable because it seeks double relief is of no force. The relief sought is one and indivisible: that the order vacating the judgment be expunged and Letukas be returned to the custody of the superintendent of the reformatory.

The respondent bases the right to vacate the judgment, where motion to vacate has been made during the term and continued, upon the general proposition that a court of record has power, during the term at which a judgment is entered, to vacate such judgment. It is true that under the common law the court had complete control over its records during the term, and, as a general rule, it might revoke or alter judgments or substitute new judgments in the place of those theretofore rendered, and section 58 of our Practice act provides that the court may, in its discretion, during the term, set aside any judgment upon good and sufficient cause, upon affidavit, upon such terms and conditions as shall be deemed reasonable. It is insisted that this rule applies to judgments in criminal cases as well as in civil cases. The rule does apply in criminal cases the same as in civil cases so long as the judgment remains unexecuted. The common law rule was founded upon the theory that no judgment became final until the adjournment of the term, as the roll was not completed and signed until that time, and until the roll was completed and signed all matters remained in the breast of the court. Under the practice in this State it is customary, upon the completion of a criminal trial wherein a verdict of guilty is returned, to enter judgment at once, to pass sentence upon the defendant and

to issue a warrant or *mittimus* to the proper officer in cases where imprisonment is a part of the sentence. When the cause has been thus concluded and the prisoner has been committed to the custody of the proper officer of the penitentiary or reformatory the jurisdiction of the trial court ceases, first, because the defendant has entered upon the execution of his sentence; and second, because the court has lost jurisdiction of the person of the defendant.

We are unable to find that the precise question here presented, of the right of a court to vacate its judgment of conviction for a felony after sentence has been pronounced and the execution of the sentence entered upon, has been passed upon. There are a large number of cases which hold that the rule is well established that the trial court is without power to set aside a criminal judgment after the same has been partly executed by defendant and impose a new or different judgment increasing the punishment, even at the same term of court at which the original judgment was rendered. (11 Am. & Eng. Ann. Cas. 298; 8 R. C. L. 245, and cases there cited.) In *People* v. *Whitson,* 74 Ill. 20, it was held that where a defendant in a criminal case has suffered punishment according to a legal sentence, a new judgment in the same case, even if rendered at the same term of court, is void.

Among the leading cases on this question is that of *Commonwealth* v. *Weymouth,* 2 Allen, 144. In that case the defendant, after a plea of guilty to an indictment for larceny, was sentenced to confinement in the house of correction for two years. On the same day, but after the issuance of the warrant by virtue of which he was ordered to be committed, the execution was stayed until a further hearing. On the next day, over the protest of the defendant, the previous sentence was revised and it was adjudged that the defendant be punished by confinement in the State prison for three and one-half years. The court held this action proper upon the ground that the defendant had not

entered upon the execution of the first sentence, and therefore the court had power, at that term, to revise its own orders. In passing upon the case the Massachusetts court said: "Until something was done to carry the sentence into execution by subjecting the prisoner to the warrant in the hands of the officer, no .right or privilege to which he was entitled was taken away or invaded by revoking the sentence first pronounced and substituting in its stead the one under which he now stands charged."

Another leading case on this question is that of *Brown* v. *Rice,* 57 Me. 55, where it was held that where a defendant has been convicted and sentenced and duly committed in pursuance of the sentence the power of the court to revise or change the sentence is at an end. That case was a petition for a writ of *habeas corpus.* The petitioner had been indicted for cheating by false pretenses, and having pleaded guilty was sentenced to imprisonment in the county jail for six months and was duly committed in pursuance of such sentence. Several days thereafter the court had him recalled, and sentenced him, on the same indictment and conviction, to imprisonment in the State prison for the term of three years. In passing upon the question presented the Supreme Court of Maine said: "After conviction, if no legal bar is interposed, it is the duty of the court to award sentence, and after such sentence of imprisonment is pronounced and recorded on the docket it is the duty of the court to issue a warrant to the sheriff or warden directing him to take the convict into custody and remove him to the designated place of confinement. When the court has done these acts it would seem to have done all that it had legal power to do, and its power over the prisoner or his destiny, under the proceedings then before it, would appear to be at an end. * * * It seems to have been settled by practice and by authority, both in this country and in England, that during the term the court has power over its unexecuted entries or judgments, and may revoke, alter

or substitute new decrees or entries in place of those be-
fore made or entered and not executed, both in civil and
criminal cases. If, for instance, a default is entered in a
civil suit and a special judgment is ordered and entered on
a day before the end of the term, and also that execution
issue accordingly, it seems that before the execution is actu-
ally issued the court may revoke and strike out the entry
and leave the case without any special entry. But if an
execution had been duly issued and if a levy had been made
or commenced, it would clearly be beyond the power of the
judge to annul the record by ordering the clerk to erase
the entry. So in a criminal case, so long as the sentence
remains entirely unexecuted in any part and no execution
of it has been attempted or made, it has been held that it
might be revoked and another sentence be substituted.—
*Commonwealth* v. *Weymouth*, 2 Allen, 144."

In *People* v. *Meservey*, 76 Mich. 223, the defendants
were sentenced on a plea of guilty of burglary for a term
of five years and were remanded to jail to await the exe-
cution of the sentence. On the same day they made an un-
successful attempt to break jail. On the next day the sen-
tences were vacated and sentences of nine and ten years in
the penitentiary were imposed. In passing upon the right
of the court to set aside its former judgment and impose a
greater punishment the Michigan court apparently assumed
that the one day spent by the defendants in jail after they
had been remanded to await the execution of their sen-
tences was equivalent to the spending of that one day in
the penitentiary, and said: "We also think that the origi-
nal sentences had gone into effect and that one day of the
imprisonment at Jackson under the sentences had passed at
the time the order was made vacating them. The circuit
judge had no power at that time to vacate the sentences,
because the authority over the prisoners had passed out of
his hands by his own order."

It is unnecessary to quote further from the authorities. While it is true that these cases all turn upon the proposition that in thus increasing the sentence imposed upon the defendant he is made to suffer punishment under two distinct sentences for the same offense and has been twice placed in jeopardy upon the same charge, we perceive no difference, in principle, between the questions there presented and the one before us. Under the holding in those cases it must follow that when the criminal court passed sentence upon Letukas and issued its warrant or *mittimus* to the superintendent of the reformatory and Letukas was delivered into his custody the power of the court over him was at an end by its own order. If there was error in the record and Letukas did not receive a fair trial, as respondent seems to believe, he has his remedy by writ of error to have the record reviewed by this court or he may appeal to the executive for clemency. While it does not appear from the petition, counsel for the respondent admitted upon oral argument that after the completion of the trial and the return of the verdict Letukas entered a motion for a new trial and a motion in arrest of judgment, both of which were overruled and denied by respondent as the presiding judge. What may have operated to cause respondent to become convinced that Letukas had not received a fair and impartial trial between the time his motion for a new trial was denied and the motion for vacating the judgment was allowed does not appear.

That it has always been recognized in this jurisdiction that a trial court had no further jurisdiction over a defendant after sentence had been pronounced and its execution entered upon is apparent from a consideration of our criminal law. Section 9 of article 2 of our constitution provides that in all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel. It is a well settled rule of the common law that a person accused of a felony must be present in person throughout

the trial and that the record should show such fact. (*Sewell* v. *People,* 189 Ill. 174.) Letukas was here charged with a felony, and although he might waive his constitutional and common law right to appear and defend in person upon the hearing of the motion to vacate the judgment theretofore entered against him, (*Sahlinger* v. *People,* 102 Ill. 241,) he might also insist upon that right, and if the motion was a proper one to be made and heard by the court, he had the right to appear there in person, as well as by counsel, and participate in the hearing upon such motion. The superintendent of the reformatory, by virtue of the order committing Letukas to that institution, was bound to keep him there safely, and he had no power to release him or to produce him elsewhere except in some of the modes provided by law. The only method provided whereby the superintendent of that institution could release Letukas or deliver him to any other officer was upon a proper order ·of reprieve, commutation or pardon by the executive, or·a reversal or a reversal and remandment of the judgment of conviction, or upon the service upon him of a writ of *habeas corpus ad testificandum* commanding him to produce Letukas in the court designated, for the purpose of testifying. Under the law the criminal court was powerless to enter any order affecting Letukas in his absence unless he waived his right to be present. Under the law it was also impossible for Letukas to be present in the criminal court of Cook county while serving his sentence in the reformatory at Pontiac. ·It is no answer to say that he was actually produced in the criminal court as the result of an application by the State's attorney for the writ of *habeas corpus ad testificandum.* That writ was improvidently issued. Respondent had presided at the trial of Letukas and the motions entered were pending before him. He was bound to know there was nothing concerning which Letukas or anyone else could testify and he should have quashed the writ on the motion of the Attorney General. The only purpose

of this writ is to enable the production of a prisoner held in the custody of an officer when it is made to appear that his testimony is material and important in some cause then pending. It is apparent that the testimony of Letukas was not desired on the hearing of this motion, and that his production on the writ of *habeas corpus ad testificandum* was a mere device to secure his attendance in court and to deprive the superintendent of the reformatory of his custody. Had the writ been properly issued and had Letukas been a necessary witness in the cause his production as a witness pursuant to the writ would not serve to give the court jurisdiction over him as defendant. Produced in this way he stood in the same position, so far as his relationship to the court is concerned, as any other witness. That there is some ground for the charge made by the Attorney General that this is a practice which has grown up in Cook county to enable the State's attorney to exercise the constitutional prerogatives of the executive is evident from the admission of the attorney for respondent, made in oral argument, that it is understood and agreed between him and the State's attorney that Letukas shall never be re-tried for this offense but that when the matter of his indictment comes on again to be heard the State's attorney will enter a *nolle prosequi.* That the court has no power to take the custody of a convict from the superintendent of the reformatory and transfer him to the sheriff of Cook county has been decided in *People* v. *Kersten,* 269 Ill. 597. It was the duty of the superintendent to produce Letukas in response to the writ of *habeas corpus ad testificandum* but it was also his duty to retain custody of him, and the court had no power to take him out of the custody of that officer. As the writ was improvidently issued, there being no matter pending in which Letukas could testify as a witness, the court should have allowed the motion of the Attorney General to quash the writ.

Under our constitution, one convicted of a criminal offense has the right to sue out a writ of error to have his case reviewed finally by the Supreme Court for any errors of law or fact which may have intervened at the trial. Aside from this, the only relief which may be obtained by anyone convicted of crime is that afforded by section 13 of article 5 of the constitution, which provides that the Governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses, subject to such regulations as may be provided by law relative to the manner of applying therefor.

The demurrer to the petition is overruled and the writ awarded as prayed.                              *Writ awarded.*