Abraham I. Kaliha, J.
The defendant was indicted and charged with the crimes of criminally selling a dangerous drug in the third degree, criminal possession of a dangerous drug in the fourth degree, and criminal possession of a dangerous drug in the sixth degree. Upon arraignment she entered a “ not guilty plea ” and was released on bail.
The indictment appeared on the ready-day calendar on January 11,1971. On several occasions thereafter the case was adjourned at defendant’s request on the claim by defendant’s attorney that his client was ill and could not appear. On April 12, 1971, the defendant appeared and the trial commenced and a jury was selected. All of the People’s witnesses testified except an expert chemist whose testimony was required to establish that the contraband alleged to have been possessed and sold by the defendant was a narcotic drug. The trial was adjourned to April 13, 1971.
On April 13,1971, the defendant’s attorney informed the court that the defendant had appeared in his office that morning and had had a fainting spell. An ambulance was called from the Long Island College Hospital and the defendant was taken to the hospital for treatment. The attorney for the defendant then made a motion for a mistrial which was denied. The court directed the District Attorney to have Dr. Philip Goldstein, the medical assistant to the District Attorney, communicate with the Long Island College Hospital and report to the court as to the defendant’s condition. Dr. Goldstein thereafter informed the court that the defendant was treated in the outpatient department of the hospital that morning and was discharged. The case was adjourned until April 14, 1971.
On April 14,1971, the attorney for the defendant informed the court that the defendant was ill and would not appear, and again moved for a mistrial. The motion was denied. The court then informed the attorney for the defendant that, absent medical proof as to the defendant’s physical condition, it would order the trial to proceed. A hearing was then held at which Dr. Gold-stein testified. After the hearing, the court again denied the application for a mistrial. A bench warrant was then issued *958 and the court directed the police officers who had testified in the case to go to the defendant’s home and execute the bench warrant. The court further directed the District Attorney to subpoena the records of the Long Island College Hospital and to subpoena the physician who examined and treated the defendant at the Long Island College Hospital. The case was then adjourned to April 15,1971.
On April 15, 1971, a further hearing was held a,t which the physician who treated the defendant at Long Island College Hospital testified. The records of the Long Island College Hospital were introduced in evidence. The police officer to whom the bench warrant was given testified and stated that he could not execute the warrant and that he was informed by the defendant’s daughter and relatives that the defendant had informed them that she would never appear in court and would flee from the jurisdiction of this court. At ithe conclusion of the hearing, at which the attorney for the defendant was present, the court again denied a motion for mistrial and directed that the trial proceed in the absence of the defendant. The attorney for the defendant informed the court that he would not participate 'in the trial and would stand mute. The court directed the attorney for the defendant to be present during the trial. The trial then resumed and proceeded to verdict. The defendant was found guilty as charged in the indictment.
The court thereafter ordered and directed the Probation Department to prepare a report for sentence and directed the attorney for the defendant to be present on the day of sentence.
The matter of sentence is now before the court. The defendant has failed to appear for sentence. Her attorney is present.
The questions to be answered by the court are:
(1) Whether the trial could have proceeded in the defendant’s absence; and (2) may the court impose sentence in the defendant’s absence.
The answer to the first question presents no problem. It is well settled that where the offense is not a capital one and where the accused is not in custody, that if after the trial has begun in his presence, he deliberately absents himself from the courtroom, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present. (See Diaz v. United States 223 U. S. 442 ; People v. La Barbera, 274 N.Y. 339 ; State ex rel Shetsky v. Utecht, 228 Minn. 44 ; Falk v. United States, 15 App. D. C. 446.)
*959 In Diaz (supra, pp. 457-458) the court quoted the following from Falk (supra, pp. 454-455, 460-461) : “ ‘ It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased, to permit it. * * " This would be a travesty of justice which could not be tolerated; and it is not required or justified by. any regard for the right of personal liberty. On the contrary, the inevitable result would be to abridge the right of personal liberty by abridging or restricting the right now granted by the statute to be abroad on bail until the verdict is rendered. * * * But we do not think that any rule of law or constitutional principal leads us to any conclusion that would be .so disastrous as well to the administration of justice as to the true interests of civil liberty. ’ ’5 * *
“ ‘ The question is one of broad public policy, whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries and turn them into a solemn farce, and ultimately compel society, .for its own safety, to restrict the operation of the principle of personal liberty. Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted an escape from prison, or an absconding from the jurisdiction while at large on bail, during the pendency of a trial before a jury, to operate as a shield from further prosecution for the crime. An escape is itself a criminal offense, although now rarely punished independently of the principal offense for which the parity is held. Can it be that an act, which is in itself a criminal offense, is to be allowed in law to operate as a release from criminal prosecution, and therefore ultimately from criminal liability? We can not think that the constitutional guarantee in its practical application will lead us to any conclusion so absurd. The Constitution was not intended to shield the guilty from the consequences of crime, but to protect the innocent.’”
The answer to the second question, as to whether the defendant can be sentenced in absentia, is not as easily answered.
At common law, the right of an accused to be present at certain stages of the trial was necessary to him. In the criminal pro *960 cedure of early English law, these rights were vital to defendants and were carefully guarded by the court, perhaps for the reason that capital punishment and prison terms were imposed more frequently in those days and for offenses which would be regarded today as being trivial. Research by this court discloses that the courts of various States almost unanimously hold that the right to be present subsequent to arraignment and plea and after the commencement of the trial in his presence and prior to the imposition of sentence may be waived by the voluntary absence of the defendant.
Where, however, as in this case, the defendant has been released on bail, it is self-evident that he orders and controls his own movements outside the courtroom. He comes and goes whenever he chooses. He is in fact his own keeper and jailer. Can he, as in this case, willfully absent and conceal himself and then urge thait a verdict, received in open court in his absence, may not be received? May he then thereafter still willfully absent himself and further urge that sentence may not be imposed.
This court is of the opinion on principle and authority that the answer to these two questions must be in the negative. A defendant cannot take advantage of his own willful wrong to defeat the ends of justice and he must be held to have waived by his misconduct his right to be present when the verdict is received and thereafter sentence pronounced. Authority for this conclusion may be found in People ex rel. Lupo v. Fay (13 N Y 2d 253, 257) wherein the court stated: “ This affirmance does not, of course, change the settled rule of felony trials that in the absence of an effective waiver defendant’s presence is indispensable while testimony is being taken, or counsel are summing up, or the jury is being instructed by the court, or when the verdict is rendered or sentence pronounced.”
In People v. Weinstein (298 Ill. 264, 268-269) the court stated: ‘1 This court and a number of other courts of this country have held that a defendant may waive his constitutional right of being personally present when he is sentenced, and that he does do so when he absconds or runs away from the court after he has learned of the verdict of the jury and refuses to return to the court for sentence or further proceedings. (Sahlinger v. People, 102 Ill. 241 ; Sewell v. People, 189 Ill. 174 ; People v. Turney, 273 Ill. 546 ; State v. Way, 76 Kan. 928.) This is now almost the universal rule in this country where the defendant is on bail at the time he runs away, as the plaintiff in error was in this case, as will be seen by consulting the note to the last ease above cited. Had not plaintiff in error been on bail and had escaped from the *961 officers and refused to return to the court for sentence, the entry of judgment and sentence in his absence would not have been a void proceeding but at most a mere erroneous judgment and sentence, which might be waived by plaintiff in error. (Harris v. People, 138 Ill. 63.) There is no theory upon which the judgment against the plaintiff in error of June 3, 1911, can be regarded as a void judgment. He was upon bail and under obligation to attend court until his trial was completely at an end and judgment and sentence pronounced against him. The waiver of his constitutional right is complete, and by his own wrong he has forfeited all right to question the judgment in any character of proceedings because entered in his willful absence. It being a valid judgment, the State certainly had no right to have it set aside.”
A further question comes to mind. Does the time to file a notice of appeal (Code Orim. Pro., § 521) commence to run from the date sentence is pronounced upon a defendant in absentiaf
There is no inherent right to appeal a court’s determination; the right to appeal depends upon express constitutional or statutory authorization (Friedman v. State of New York, 24 N Y 2d 528 ; Matter of Grand Jury of Kings County [Reardon], 278 App. Div. 206).
The court is not unmindful of what the Court of Appeals enunciated in People v. Montgomery (24 N Y 2d 130), that every defendant has a fundamental right to appeal his conviction and that, accordingly, basic fairness and due process require that the right not be dissipated when because the defendant was unaware of its existence or counsel failed to abide by a promise to either file or prosecute an appeal.
In People v. Lynn (28 N Y 2d 196) the Court of Appeals was called upon to determine whether upon a plea of guilty, counsel must, pursuant to the rule enunciated in Montgomery (supra), advise a defendant of his right to appeal.
In distinguishing such right in a case of a trial and that of a plea of guilt, the court held that a defendant after trial must be informed of his right to appeal and upon his mere assertion that he was not informed of such right, a hearing should be had to determine such question, but that a different rule is to obtain in plea situations. The court held that where a defendant has pleaded guilty, it is not enough that he allege a failure to have been advised of his right to appeal. He must also show that at that time he had a genuine appealable issue which he might have raised had he been advised of his right to appeal.
*962 The rationale for this distinction as stated in Lynn (supra, p. 202) is: “ It is merely a recognition that in cases of a guilty plea it is reasonable to assume, absent allegations to the contrary, that the defendant has neither reason nor desire to prosecute an appeal.” Does it not logically follow that a defendant who, by his willful misconduct, absents himself during a trial, as in this case, has no interest in the outcome of the trial and if a guilty verdict is rendered, neither a reason nor desire to prosecute an appeal? An additional reason for this conclusion may be found in Lynn (supra, p. 202): ‘ ‘ Under these circumstances, a defendant having pleaded guilty to a charge, should not, years later, at a time when the prosecution is perhaps unable to prove its case, be allowed to assert that his constitutional right to appeal has been obstructed. ’ ’ It may well be that, in this case, many years may pass before the defendant is apprehended or surrenders herself.
It is, therefore, the considered judgment of this court that a defendant charged with crime cannot take advantage of his own willful act to flee the jurisdiction and thus defeat the ends of justice. Under such circumstances, the time to appeal commences to run from the date sentence is imposed. This, in the eourt’-s opinion, is not violative of due process.
The defendant is not without remedy. Should the defendant be apprehended and brought into court, or should she hereafter voluntarily appear, she may make application to vacate the judgment of conviction and resentence, or may make such further application for such other relief as she may be advised.
While the burden may rest heavily upon the def endant in such a case, it may well be that she will satisfy the court that her conduct was not willful and deliberate and that there was a genuine and valid reason for her actions. No claim of any validity or merit has been presented to the court since the commencement of the trial and the verdict and upon the day of sentence to indicate that the defendant’s conduct in absenting" herself was not a willful and deliberate act on her part to avoid prosecution. As heretofore stated, her actions and conduct constituted a complete waiver of her right to be present at the trial, verdict and sentence.
Accordingly, for the reasons heretofore stated, the court can reach no other conclusion than that the defendant by her act of fleeing the jurisdiction and absenting herself from the trial effected a waiver of her right to be present and authorized the court to proceed with the trial and after the verdict pronounce sentence.
*963 In view of the defendant’s absence, the allocution mandated by section 480 of the Code of Criminal Procedure may well be an exercise in futility. Nevertheless, the court directs that the Clerk comply with the provisions of the Code of Criminal Procedure as aforesaid.
The judgment of this court is that the defendant is sentenced as follows: For the felony of criminally selling a dangerous drug in the third degree, whereof she is convicted, that the defendant is sentenced to an indeterminate sentence of imprisonment which shall have a maximum term of seven years; for the felony of criminally possessing a dangerous drug in the fourth degree, whereof she is convicted, an indeterminate sentence of imprisonment which shall have a maximum term of four years which shall run concurrently with the sentence heretofore imposed. As to the misdemeanor charge of criminally possessing a dangerous drug in the sixth degree, whereof she is convicted, a conditional discharge.
It is further ordered by this court that the defendant be committed to the custody of the State Department of Correction. Let a commitment issue to the proper authority.